STATE OF IOWA v. CHARLES BOLLERMAN, Appellant.

Seduction: Evidence. Defendant met prosecutrix at four platform dances given at her home. Told her he loved her, after the first of these dances. Had nothing to do with her for a year thereafter and during that period another waited on her with a mutual view to marriage. At the end of that year defendant and she met at a dance, left it to walk, and entered a corncrib. He said that he loved her and attempted to raise her clothes. He caught her and told her "to quit acting the fool" and that he would be out and speak to the folks about joining the church, and about "having her," upon which she consented to intercourse. She also says she resisted to the utmost and that this was the only intercourse. She testified to prior acts of intercourse, before the grand jury. There was slight connecting evidence. *Held*, the court would have been warranted in directing an acquittal.

*Appeal from Shelby District Court.*—HON. WALTER I. SMITH, Judge.

WEDNESDAY, DECEMBER 12, 1894.

INDICTMENT for seduction. Verdict of guilty, and defendant appealed.—*Reversed.*

*Byers & Lockwood* for appellant.

*John Y. Stone*, attorney general, and *Thos. A. Cheshire* for the state.

GIVEN, J.—Defendant is charged with seducing one Kate Lehr on Thanksgiving Day, 1891. The evidence to prove the act of intercourse consists entirely

of her testimony, and it is claimed to be wholly insufficient to show the offense of seduction, and that there is no corroboration to warrant a conviction.    We think the claim that the evidence does not show seduction must be sustained.    The evidence of seductive arts is exceedingly light.    From July to some time in the fall of 1889 there were platform dances at the home of the prosecuting witness (her father's house), and the defendant met her at those dances four times, and during the same fall went with her, in company with others, to a dance at Earling.    After the first of these dances she says he acted lovingly toward her; told her he loved her, and did not care for any other girl.    During the fall of 1889 she did not see him except at these dances, where they talked together, but there were no pretensions other than as above stated.    From the fall of 1889, for more than a year, they did not meet until they met at Panama, Thanksgiving night, 1890, at a dance, where it is claimed the seduction took place. During this year and more there was no communication between them whatever.    From some time after Christmas, 1889, till May, 1890, one Bogue Rhodes went regularly to see her on Sundays, and his attentions to her did not cease until some time in 1892, the alleged offense having taken place in November, 1890. According to her statements, at this first and only meeting in 1890, after dancing with her one or more times, he started to take her to supper, when they concluded to walk, and not take supper.    Her story, in brief, is that while walking, at his instance, they turned aside to a corncrib, where he professed to love her, and attempted to lift her clothes, "when she ran from him, and he caught her, and said, 'Quit acting the fool;' that he 'would be out on Sunday, and speak to the folks about joining the church and about having her.'"    She says that, because of what he said, she permitted the intercourse between them, and says this

was the first time. When before the grand jury she stated that she first had intercourse with him in October, 1890, and again the Sunday following, and the third time in September, 1891. At the trial she explicitly states, on cross-examination, that when she ran, and he caught her, he accomplished his purpose by force; and she is so explicit in her statements of resistance that, if true, the crime is certainly rape, and not seduction. She says she "did everything in her power to prevent him from doing it." These facts should control the case, and no verdict should be permitted to stand upon such a state of the evidence. While there is slight corroborating evidence that might tend to connect the defendant with the offense if it had been committed, there is not a particle of evidence to corroborate her testimony as to the facts we have been considering,—those showing the crime of seduction. It is true that the testimony of a prosecuting witness may be sufficient to show such an offense, and that the corroboration need only tend to connect the defendant with the offense; but it is with the sufficiency of the evidence to show such a fact that we are dealing. If we take her statements of what occurred on the night of the alleged offense, it is so conflicting as to the means of obtaining the intercourse that there is no reliance whatever to be placed upon it. What occurred more than a year before, as we have stated it, could not have been an inducing cause, because of her intervening relations to Rhodes, during which time their marriage was a subject of consideration between them. Evidence to show the offense charged is so wanting that the court might well have directed a verdict for the defendant. REVERSED.