Crozier *v.* The People.

</div>

---

SUPREME COURT.    Albany General Term, December, 1853.
*Parker, Wright* and *Harris,* Justices.

JOHN K. CROZIER, pl'ff in error *vs.* THE PEOPLE, def'ts in error,

It is not necessary, in drawing an indictment under the act to punish seduction as a crime passed March 22, 1848, to allege mutual or valid promises of marriage. It is sufficient to aver, in the language of the act, that the prosecutrix was seduced under promise of marriage. Per PARKER, J. Nor is it necessary on the trial to prove a valid and binding promise of marriage. If the seduction was effected by means of a promise of marriage, though the promise was intended to be and was in fact a false pretence, and one which the seducer knew it was not in his power to perform, the offence is nevertheless within the statute.

By " previous chaste character" the statute means personal chastity—actual character—not reputation. In the absence of proof such chastity will be presumed. But the presumption may be overcome by specific acts of lewdness proved affirmatively, on the part of the defendant.(*a*)

(*a*) Note.—From other cases reported in this volume, it will be seen there are differences of opinion upon the last two propositions. See *The People* v. *Alger,* page 333, and *The People* v. *Safford,* page 474.

The evidence contemplated by the statute in support of the testimony of the female is not confined to proof of the fact of illicit intercourse, but extends to proof of other material facts; such as the illegitimacy of her child, the regular and frequent visits of the defendant, his being alone with the prosecutrix at late hours of night, and his confessions made to others on the subject of his engagement to marry her, &c. But it is not sufficient to corroborate her as to immaterial facts contained in her testimony.

This was a writ of error to the court of sessions of Washington county. The plaintiff in error was indicted under the act passed March 22, 1848, entitled "an act to punish seduction as a crime."

The indictment contained two counts. The first count charged "that John K. Crosier, late of the town of Salem in the county of Washington, on the 8th day of June, 1849, at the said town of Salem in the county of Washington aforesaid, did unlawfully, and feloniously, under a promise of marriage, seduce and have illicit connection with Emeline J. Oderkirk, an unmarried female of previous chaste character, against the peace of the people of the state of New York and their dignity.

The second count charged, that the said John K. Crozier, &c., on, &c., at, &c., "did undertake and promise to marry Emeline J. Oderkirk, an unmarried female of previous chaste character; and that the said John K. Crozier did then and there unlawfully, under said promise of marriage, seduce and have illicit connection with the said Emeline J. Oderkirk, then and there being an unmarried female of previous chaste character, as aforesaid, against the peace," &c.

On the trial of the indictment at the sessions, Crozier was found guilty and sentenced to imprisonment at hard laber in the Clinton state prison for the term of two years. Crozier brought a writ of error.

The questions raised on the trial sufficiently appear in the opinion of the court.

*James Gibson*, for plaintiff in error.

*J. Potter*, (Dist. Att'y,) for defendant in error.

PARKER, P. J. I shall examine the points made by the plaintiff in error in the order in which they were presented on the argument.

1. The first is that the indictment was defective in not allega a mutual promise of marriage.

The counsel for Crozier concludes that the promise contemplated by the act must be a valid promise — one that is legally binding, and depending for its consideration on a corresponding promise made by the party seduced; and argues that a lunatic or an idiot might be made liable for seduction under this statute, unless a valid and binding promise is intended. The answer to that argument is that a lunatic or idiot could not be guilty of that or any other crime, because he is incapable of a criminal intent. He has, in law, no legal responsibility, for a criminal act, though liable for a tort in an action for damages (3 *Wend. R.* 391; 21 *Wend.* 619; 6 *Hill,* 594; 3 *Barb. S. C. R.* 647; 17 *Verm. R.* 499.) Even though mutual promises were alleged and proved, a lunatic or idiot could not, therefore, be liable for seduction under this act. But I do not think the statute is intended to be confined to a case of a valid and binding promise of marriage. The offence is seducing " under promise of marriage." It is intended to punish seduction criminally, when it is effected by means of such a promise. Whether the promise is binding or not, if the prosecutrix believes it, the danger and wrong are the same. If the promise is the consideration for, or the inducement to the illicit intercourse, the offence is complete. The offender may be a married man, and the fact of his being so may be unknown at the time to the prosecutrix. It has been decided that in such a case, an action for breach of promise lies against him. (*Millward* v. *Littlewood,* 1 *Eng. Law and Eq. R.* 408.) If the promise is made, and she, believing in it, yields in consequence to his solicitations, the act is within the statute. Though infancy may be a good defence to an action for a breach of promise of marriage, (5 *Cowen R.* 475,) I apprehend it would not avail against a prosecution under this act. The offence is certainly of no less magnitude morally, and there is no less necessity for its punishment, be-

cause the promise was intended to be, and was in fact a false pretence.

This point presents, after all, only an abstract proposition, incapable of any practical application. It is not a supposable case, that a seduction could be effected under promise of marriage on the part of the seducer, without a corresponding mutual promise to marry, on the part of the seduced. Such promise on the part of the female would be implied, if she yielded to the solicitations of the seducer in consequence of his promise to marry her. Her assent to his promise of marriage completes the contract and makes it mutual.

If I am correct in this view, it follows that the indictment is sufficient. I think the indictment is also sufficient, even if a case of mutual promises is contemplated by the act. The indictment alleges the offence in the words of the statute. In *The People* v. *Taylor* (3 *Denio, R.* 93,) it was said by Bronson, J.: "It is a general, though not universal rule, that in indictments for offences created by statute, particularly misdemeanors, it is sufficient to charge or describe the offence in the words of the statute." This rule is well established by authority. (7 *Peters*, 142; 2 *Mason*; 3 *Fairf.* 214; 2 *Virg. Cas.* 402; 1 *Iredell N. C.* 424; 2 *McLean*, 131; 2 *Burr.* 1035.)

2. The second point is, that the court allowed mutual promises of marriage to be proved, though not averred in the indictment. If I am right in holding that mutual promises were unnecessary under the statute, then the evidence of her promise to him might have been omitted, because it was not necessary to convict, but even in that case it was properly received as belonging to the history of the transaction. It was a part of the same conversation in which he promised, and could not be omitted without destroying its connection and meaning. It was also corroborative of her testimony, as to the promise he had made, by supporting its probability. If, on the other hand, the statute contemplates a case of mutual and valid promises to marry, and the indictment was sufficient, as being in the words of the statute, then the evidence was properly received. If the words "under promise of marriage," in the statute imply a mutual

Crozier *v.* The People.

and binding contract of marriage, then the same words are entitled to the same implication and construction in the indictment. The second point is not, therefore, well taken.

3. The third point is, that the charge to the jury was erroneous in several particulars. One was, in saying that no affirmative proof of the chastity of the prosecutrix was necessary, as the law presumes any person to be of fair character until the contrary appears. Here was no necessity for saying anything about presumptions of law on this question, as the prosecutrix had already testified to her previous chastity, and it had not been successfully impeached. It was a question of *character*, not of *reputation*. It was a question of actual personal virtue. Such was the construction given to the words " previous chaste character" in a kindred statute, and I have no doubt correctly, in *Carpenter* v. *The People*, (8 *Barb. S. C. Rep.* 603.) Now, it seems to me plain, that this comes within the general rule, that good character is to be presumed of parties, witnesses, &c., until the contrary is shown. Chastity is the general law of society. A want of chastity is the exception. It could only be impeached by showing acts of illicit intercourse. This can not be required to be gone into negatively on the part of the prosecution, by calling witnesses to prove they have not had illicit intercourse with her. Chastity is to be presumed. Such presumption may be met by specific acts of lewdness proved affirmatively on the part of the defendant.

The part of the charge next excepted to related to the necessity of proving mutual and valid promises of marriage. I have already disposed of that question on the first objection taken to the indictment.

The third exception was to the following portion of the charge; the judge charged: " That the evidence as to the illicit intercourse with defendant, was supported by the fact, that she was impregnated; that she gave birth to a child, and that the defendant was a regular visitor." The statute provides that no conviction shall be had on the testimony of the female seduced, unsupported by other evidence. The counsel for Crozier is mistaken in supposing that the statute intends to require, by

the words, " other evidence," positive proof by some other person than the prosecutrix, of the fact of illicit intercourse. Such evidence could rarely, if ever, be obtained. The statute requires corroborating evidence, but has not pointed out what it shall be. That she had given birth to an illegitimate child, and that Crozier was a regular visitor, were facts proved by others, that certainly supported, to some extent, her evidence. So were the facts that he proposed marriage to her by a message sent to her, as proved by her uncle; that he virtually admitted to the same witness his engagement to marry her; that he was alone with her late at night, and that angry words passed between them, when he was about to marry another, as proved by Fish. The charge was not only correct on this point, but the evidence would have warranted the presiding judge in enumerating several other facts as supporting her testimony.

The judge also charged that there was no proof of improper intercourse between the prosecutrix and the witness, March, at Graves' tavern, and that the law would not presume it from the facts proved.

This part of the charge was strictly correct. There was no proof of any improper intercourse at the time and place mentioned March testified to none. She testified she had no intercourse with March; showed how she came into his company at that time; stated additional facts and explained the circumstances relied on as suspicious and as warranting an unfavorable presumption. When the judge said the law will not presume it from the facts proved, he intended to include all the facts proved on both sides relating to that transaction; and clearly from them no unfavorable inference could be drawn.

Most of the several requests and refusals to charge, are but the converse of the propositions already discussed, and call for no further notice. But there is one which presents a different question. Crozier's counsel asked the court to charge, " that supporting evidence of immaterial facts contained in her evidence was not supporting evidence within the statute." The court refused so to charge, to which refusal the defendant's counsel excepted.

This decision was palpably erroneous. When the statute provided that no conviction should be had under the provisions of that act on the testimony of the female seduced, unsupported by other evidence, it certainly did not mean that it was sufficient to support any immaterial evidence she may have given. The facts as to which she is corroborated must be material facts, though it is not necessary that one of them should be that of illicit intercourse itself. Many other facts may be material, as I have already shown. For this error, the judgment of the County Court must be reversed, and a new trial awarded.

HARRIS, J., concurred. WRIGHT, J., concurred in the conclusion, upon the ground last considered, but dissented from the opinions expressed on the first and second points.

