## ANDRE v. THE STATE OF IOWA.

The term "character" in section 2586 of the Code, which provides that if any person seduce and debauch any unmarried woman, of previously chaste character, &c., signifies that which the person really *is*, in contradistinction to that which she may be reputed *to be*.

In order to establish the unchaste character of an unmarried female, it is not necessary to prove that she has been guilty of sexual intercourse.

Where on the trial of an indictment for seducing and debauching an unmarried woman, the court instructed the jury, that "unchaste character," as understood in a case of this kind, means sexual intercourse; *Held*, That the instruction was erroneous.

On the trial of an indictment for seduction, in the absence of proof to the contrary, the chastity of the female will be presumed.

Where on the trial of an indictment for seduction, the court instructed the jury as follows: "That the corroborating evidence contemplated by section 2999 of the Code, is not confined solely to the proof of the fact of illicit intercourse, but extends to proof of other material facts, such as the illegitimacy of the child—the regular and frequent visits of defendant to the female—his being alone with her at late hours of

the night—and his confessions made to others on the subject;" *Held*, That the instruction was correct.

And where on such a trial, the defendant asked the court to instruct the jury as follows: "That the corroborative testimony required by section 2999 of the Code, should be of a character that goes directly to the commission of the offence," which the court refused to give, and modified the same so as to read: "That the corroborative testimony required by section 2999 of the Code, should be of a character to strengthen and corroborate the testimony of the injured person, and to point out the defendant as having committed the offence;" *Held*, That the instruction as modified, was correct.

## Appeal from the Cedar District Court.

### SATURDAY, DECEMBER 26.

The defendant was indicted under section 2586, of the Code, which is in the following language: "If any person seduce and debauch any unmarried woman, of previously chaste character, he shall be punished by," &c. The indictment charges that the defendant, " on the tenth day of May, A. D., 1856, in the county aforesaid, one Catharine Falloon, an unmarried woman, of previously chaste character, did unlawfully, willfully, and maliciously seduce, debauch and carnally know," &c. The errors assigned, and the questions made, appear in the opinion of the court. The defendant was convicted, and brings this appeal.

*Cook, Dillon & Lindley*, for the appellant.

The court instructed the jury, that "unchaste character, in a case of this kind, means sexual intercourse." In our opinion, that is not the law. The section of the Code on which this indictment is framed, must be strictly construed; and if so, then it is clear that the female, Catharine Falloon, must have previously sustained a character, which would be included in the broadest definition of the word chaste, namely: She must not only have been free from all unlawful commerce of sexes, but also free

from obscenity. The same words were so construed in a kindred statute in New York, 8 Barbour, 603. The supreme court of that state. held, "that previous chaste character, as used in the act to punish seduction as a crime, meant actual personal virtue in the female; and to sustain an indictment, it is necessary that she should have been chaste and pure in conduct and principle, up to the time of the commission of the offence." Shall not the identical words in our statute, receive the same construction?

It is just as necessary to sustain the indictment in this case, that the female, Catharine Falloon, should have been chaste and pure in conduct and principle; and when it appeared by the evidence, that she had committed frequent acts of gross lewdness; that she had been guilty of indecent exposure of her person, in the presence of men; indulged in the use of obscene and vulgar language, and both permitted, and took improper liberties with persons of the other sex, it was surely error to instruct the jury, that "unchaste character means actual sexual intercourse." Such conduct on the part of the female, is not mere evidence, tending to prove unchaste character, but does, of itself, constitute a want of chastity, as contemplated by the Code."

Hence, too, the court erred in refusing the eighth instruction of the defendant. If the law is not contained in that instruction, then a female may delight in lewdness, be guilty of every indecency, lost to all sense of shame; nay, she may be the mistress of a bawdy house, a very pimp, and yet, if she have only escaped actual sexual intercourse, however much desired by her, she is to be regarded as a fit subject for seduction, and the heavy penalties of the law are to be visited upon her seducer.

The court instructed the jury, that "in the absence of proof, the previous chastity of the prosecuting witness, Catharine Falloon, will be presumed." By whatever authority, if any, this position may be sustained, it is manifestly wrong, and does great injustice to the person charged with this offence. The previous chastity of the female is indispensable to establish the guilt of the accused. In the

Andre v. The State of Iowa.

absence of that fact, he has committed no offence. To presume her chaste, therefore, is to presume him guilty, which is a violation of the well known principle of law, that every person must be presumed innocent, until the contrary is proved.

The presumption of innocence, is paramount to all other presumptions known to the law. The exception to the rule, is the case of a libel, sold by the servant of a publisher. Public policy requires that in such case, the knowledge of the principal should be presumed. The other instance of presumption against innocence, arises wholly from the acts of the accused, such as his possession of stolen property; and here the presumption is raised wholly by his failure to explain circumstances peculiarly within his knowledge. In the case of the seduction of a female, the fact of the previous chastity lies peculiarly within the knowledge of the prosecution, and should not, in all justice, be presumed against the accused. This is not the case of presumed good character of parties, witnesses, &c., but here the chastity of the female is a material in the indictment, and must be proved. The prosecution attempted to prove this fact by the female herself. The defence introduced testimony to prove the contrary. The court settled the question against the accused, by throwing into the scale the presumption of her chastity.

The presumption of innocence is stronger than the presumption of life. 1 Greenleaf, sec. 35; Wills on Circumstantial Evidence, 121, side page.

*Samuel A. Rice*, Att'y General, for the State.

1.   The words "previously chaste character," as used in the statute, do not refer to the reputation of the witness, but to whether or not she has had previous sexual intercourse. 1 Park. Crim. Cas., 457.

2.   Chastity will be presumed, unless the contrary is shown. 1 Parker Crim. Cas., 456.

3.   Although it is a presumption of law, that the ac-

cused is innocent, until the contrary is shown, yet that presumption does not overcome certain presumptions in regard to other persons, and to which they are entitled, as that witnesses on either side have testified truly, unless the contrary appears; or that the prosecutrix was chaste, unless disproved; or that the defendant even intended the natural result of his acts. 1 Park. Crim. Cas., 457; 1 Greenleaf, Ev. Ch. Presumptions.

4. The defendant contends that the expression, "unchaste character," in the statute, has not reference to acts of lewdness merely, but applies to any unbecoming act or word, while the court holds, that her character for unchastity must have reference to sexual intercourse, and this is the full import of the instruction given by the court. The court says, that "unchaste character, as understood in a case of this kind, means sexual intercourse"—that is, such character must have reference to such act, as contradistinguished from a character for anything else. The Supreme Court of New York, in *Crozier* v. *The People*, in speaking of a case under a similar statute, say: "Chastity is the general law of society. A want of chastity, is the exception." It could only be impeached by showing acts of illicit intercourse, and in the case of *Safford* v. *The People*, they say, that the word "character," being affixed or added to the words "previously chaste," "it would seem the legislature intended something more than mere impurity of mind." If the defendant's construction be true, then mere rumors in regard to the character of the most virtuous female, if afloat in the community, would be a sufficient defence to the debauchee, and be a shield to defend him in his criminal designs.

WOODWARD, J.—The first error assigned, relates to the instruction, that "unchaste character, as understood in a case of this kind, means sexual intercourse." And this presents the principal question in the cause. In the cases cited by counsel, and to which we shall have occasion to refer, there is considerable inaccuracy of language, and a

confusion of terms, which it is desirable to avoid as far as possible. Thus, the words character and reputation, are sometimes used as synonymous. There is a real difference of meaning between them, and in a case of this kind, it is important to preserve the distinction. According to Webster, character signifies the peculiar qualities impressed by nature or habit on a person, which distinguish him from others; these constitute real character, and the qualities which he is supposed to possess, constitute his estimated character, or "reputation." And then he defines reputation to be, good name; the credit, honor or character, which is derived from a favorable public opinion or esteem, and character by report. It is very true, that the word character, is often used colloquially in the same sense as reputation; and so it sometimes is, by writers not aiming at accuracy of expression, but such is not its true signification. And in so important an instrument as a statute defining a crime, it must be presumed the legislature used the term in its true sense, unless the context renders another necessary. In the instance of the present statute, the consequences might be too serious to allow this confusion of terms, since one who had done another one of the greatest wrongs, might escape his just punishment, upon the strength of a mere slander, and that too, possibly, originating with himself.

We think the statute intended to use the term "character" in its accurate sense, and as signifying that which the person really is, in distinction from that which she may be reported to be. But the question made in the first assignment of error is, whether this word involves the actual commission of the unchaste act. There are difficulties on both sides of the question, and it is not easy to find a satisfactory conclusion. But, after a fair examination of the question, we are of the opinion that the court below erred in holding, that the words mean "sexual intercourse"—by which the court meant that, in order to acquit the defendant, the jury must believe that Catharine Falloon had previously been guilty of the unchaste act itself. Besides the

above expressions, used to give definiteness to the words, the court said: "By previously chaste character, the Code means personal chastity—actual character." But for the use of the expressions, " sexual intercourse," and "personal chasti-ty," it might have been doubtful whether the court intended to carry the definition so far; for the term, " actual charac-ter," does not assist the mind; and in another portion of the instructions, the court says: " The general reputation of persons, in the neighborhood where they reside, is good evidence as to character," &c.   And again: "The defend-ant may, however, show that the prosecutrix was not of previously chaste character, either by proving an actual want of chastity on her part, or by showing her general bad reputation for chastity;" and it would not be easy to suppose that the court means that reputation could be re-ceived to prove the criminal act itself.

The language of the statute is not, a woman of " pre-vious chastity," but such, we should suppose, would have been its language, had this been the meaning intended. We suppose the word " character," was designed to have its proper force, and that according to its true signification. If the statute is understood to require actual chastity, then a woman of lewd conversation and manners—guilty of lascivious acts, and of indecent familiarity with men—is an object of its protection, equally with one who is pure in mind and manners; and all the presumption arising from the commission of the act, would attach to the de-fendant, in the one case as strongly as in the other.  We cannot think that a female who delights in lewdness—who is guilty of every indecency, and lost to all sense of shame —and who may be, even, the mistress of a brothel—is equally the object of this statute, (if she has only escaped actual sexual intercourse,) with an innocent and pure wo-man; and that a man is equally liable, under the law, as well in the one case as the other.  The statute is for the protection of the pure in mind—for the innocent in heart—who may have been led astray—seduced, from the path of rectitude; and the jury are the sole judges, in each case, who comes with-

in this description.   Under this construction of the statute, obscenity of language, indecency of conduct, and undue familiarity with men, have more weight, than under the other view.   They serve to indicate the true character; they become exponents of it; and a defendant is not punished for an act with one whose conversation and manners may even have suggested the thought, and opened the way to him, as he would be for the same act with one innocent in mind and manners.

But we desire to guard against a conceivable wrong inference.   Whilst the demeanor, the acts and conduct, with the conversation, of a woman, may be shown and considered, in order to arrive at her character, and are the usual means, where she is not shown to have committed the act of unchastity, still the jury are the sole judges of the actual character of chastity.   No particular amount or degree of such manners or conversation, can be set down as conclusive evidence of an unchaste character, but the jury must determine whether, under the facts shown, the real character be thus.   It is not every act of impropriety, nor even of indecency, that should affix this stain upon a female, and deprive her of the protection of the law. Persons differ in their manners and tone of conversation, in their education, and in their manifestation of character. Some are much more free and unrestrained than others, whilst we have no more doubt of their purity in the one case than in the other.   Some are quite free with their acquaintances and intimates, and at the same time, are above suspicion of wrong.   It becomes, therefore, one of the highest and most solemn, as well as most delicate, duties of a jury, to judge of the proofs of such acts and words, with the utmost intelligence, care, and freedom from bias, that a female, innocent in truth, and of actual purity of mind, may not suffer as a guilty one, from a few light and inconsiderate words or acts, which may be consistent with an invincible purity and integrity of heart.   . And it will not be improper to enjoin it upon the juries of our state, to examine with extreme caution, into questions

of this nature—not to judge hastily, nor lightly, but to guard with ever a jealous care, the reputation of those whose reputation is their all.

Finally, it seems to us, that if the legislature intended, as argued by the prosecution, it would have used the phrase, "a woman previously chaste," or "of previous chastity," or the like, which are the directly natural words to express the idea of actual chastity, or chastity in fact. These words seem to us very simple and natural for the purpose, and to be free from ambiguity. And we cannot avoid the conclusion, that the statute intends something different, by the use of the word "character." In this view, we are supported, as we think, by the case of *Carpenter* v. *The People*, 8 Barb, 603. The case of *Crozier* v. *The People*, 1 Parker's Crim. R., 457, coincides with the views above expressed, insomuch as it says, "that it is a question of character, not of reputation." But it appears to make the word character, call for actual chastity; and yet it cites *Carpenter* v. *The People*, as supporting the view there held. This case of *Crozier* v. *The People* is, at the best, ambiguous. The case of *Swafford* v. *The People*, 1 Park. Cr. R., 474, so confounds the meaning of terms, and is so peculiar in its reasoning, that we would not venture to cite it as an authority sustaining either view. In conclusion, upon this point, we are of the opinion, that the district court erred in the meaning given to the expression, " chaste character."

The second error assigned, is to the instruction, that, in the absence of proof, chastity will be presumed. We think the court did not err in this, especially in view of the sense which it gave to the foregoing words. Neither do we conceive it to be error, when regarded in the sense which this court attaches to the phrase, "chaste character." To determine this question of presumption, it becomes necessary to choose between two rules, and define which is applicable to such a case in such a state. One of the rules referred to, is that one which requires the prosecution to prove all those facts, circumstances and qualities which go to make

or constitute the offence. The other rule is, that which calls for a presumption of innocence, rectitude, and good character generally.

The defendant argues that, to presume in favor of the character of the woman, in this case, is to presume against his innocence. But, to our minds, this is not so. He will be presumed innocent of the fact — the act charged — whilst the presumption may be in favor of the rectitude of her character. And there seems to us no inconsistency in applying these presumptions in this manner. If the prosecution were held to show such a character, in the first instance, the lightest amount of evidence would be sufficient to make a *prima facie* case, and the burden would still be on the defendant; and there does not seem to be much weight in the argument, which is satisfied with this merely formal compliance with the rule, whilst, on the other hand, there is a substance in the presumption of innocence and uprightness, which requires a force of evidence to overcome. The above cited cases from New York, are placed upon this same ground, applying the assumption to chastity in fact, and arguing that chastity is the general law of society, and a want of it, the exception. See *Crozier* v *People*, 1 Park. Cr. R., 457. And the same argument applies with equal force to chastity of character. It does so, of course. They are the same thing, in substance, when regarded in relation to this rule. It is our opinion, that the presumption of a "chaste character" extends to the woman in this case, and that the contrary is to be shown.

The third error alleged, is in the instruction, "that the corroborating evidence contemplated by the statute, (sec. 2999), is not confined solely to the proof of the fact of illicit intercourse, but extends to proof of other material facts —such as the illegitimacy of her child — the regular and frequent visits of defendant to the female—his being alone with her at late hours of the night—and his confessions made to others on the subject," &c. This instruction is supported directly by *Crozier* v. *People*, 1 Park. Cr. R., 454, and we concur in the view taken. This point requires

no enlargement.   Facts showing intimacy, opportunity and inducement, (if we may so say), certainly tend, in some degree, to corroborate the witness, just as truly, though it may be not in the same degree, as proving an *alibi*, at the time sworn to, would go to discredit her.   The weight and value of such evidence is for the jury to consider, and it is for them to draw their conclusion accordingly.

The matter of the third assignment, is embraced in the fourth, with a possible shade of difference.   The court declined giving the second instruction precisely as asked, but modified it somewhat.   That requested to be given related to section 2999 of the Code, and was, that "this corroborating evidence should be of a character that goes directly to the commission of the offence."   The court struck out the words, "to the commission of," and instead thereof, inserted these, "to strengthen and corroborate the testimony of the injured person, and to point out the defendant as having committed" the offence.   The language of section 2999, on this point, is, "unless she be corroborated by other evidence, tending to connect the defendant with the commission of the offence."   The aim of the defendant's counsel, undoubtedly was, to require the corroborating evidence to point to, and connect with, the commission of the precise act itself—the act of debauching,—whilst the view of the court seems to have been, that the corroborating evidence need not point directly to the act, but might, in its direct aim, point to the circumstances surrounding the parties—as to the intimacy—the opportunities—and to any facts which "tended to connect the defendant with the commission of the offence," which last is the language of the statute.   We should say that, in the second instruction asked, the counsel looked principally to the act of debauching, whilst the court looked to the whole offence, which consists of both seducing and debauching; and the latter, we think, the more correct view, and more consonant with the intention of the statute.

The fifth assignment of error, relates to the refusal of the court to give the eighth instruction requested by the

defendant, which, so far as it is needful to refer to it, for the present purposes, was that: "No chaste and virtuous girl, would allow a man to take improper liberties with her person, without resenting it at once; where an unmarried female so far forgets what is due to her sex, as to take improper liberties with a man, such as unbuttoning his pantaloons, and thrusting her hands into and upon his privates, or allows a man to feel of her breasts and legs, she ceases to be chaste or virtuous, in contemplation of the law under which this indictment is found." The instruction then proceeds to ask the court to charge the jury, that the defendant is entitled to the benefit of any reasonable doubt; and, therefore, if they have a fair doubt of her chastity, they must acquit. There are two objections to this instruction: first, it takes too much from the jury, and makes it matter of legal sequence; and secondly, it unites several kinds of matters in one charge, so that it is difficult to separate them. That part of the instruction which relates to certain supposed instances of conduct, was matter belonging to the jury, and the court could not lay down, as a sequence of law, the proposition therein contained. That part of the instruction which refers to a doubt on the mind of the jury, might have been given, had it not been so interwoven with other and objectionable matter.

Therefore, on account of the error contained in the first instruction, the judgment of the district court is reversed, and a *venire de novo* awarded.