THE STATE OF IOWA v. LEONARD WYCOFF, Appellant.

**Seduction:** REVIEW OF CONVICTION: *Evidence.* On a prosecution for seduction, prosecutrix stated that previous thereto accused was constant in his attentions taking her to parties, and on frequent drives, and often indulged in kissing and embracing her, that while out driving with her on the night of the alleged offense he stated to her that he loved her, and, before attempting anything wrong, kissed her, and stated that he would not leave her if she got into trouble. Accused admitted the sexual intercourse, and that he embraced her whenever they went riding, but denied that he stated that he loved her. *Held,* sufficient to sustain a conviction.

CHASTITY: *Subsequent illicit relations of prosecutrix.* Evidence of prosecutrix's illicit relations with another after her intercourse with accused is insufficient to establish that previous to her connection with him she was not of chaste character.

CORROBORATION: *Undisputed intimacy and cohabitation* The crime being established, the undisputed fact of their intimacy and actual cohabitation is sufficient to corroborate evidence of prosecutrix that it was defendant who seduced her.

*Appeal from Shelby District Court.*—HON. N. W. MACY, Judge.

THURSDAY, OCTOBER 4, 1900.

THE defendant was indicted, tried, and convicted of the crime of seduction, and from the judgment of imprisonment rendered against him he appeals.—*Affirmed.*

*Byers & Lockwood* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van-Vleck* for the State.

GIVEN, J.—I. The charge is that on the twelfth day of December, 1897, the defendant "did willfully, unlawfully, and feloniously seduce, debauch, and carnally know one Flora N. Whitcher, said Flora then and there being

an unmarried female of previouly chaste character, contrary to and in violation of law." The defendant's first contention is that there is not sufficient evidence to sustain the verdict and judgment, in that it does not show that the defendant used seductive means, or that the prosecutrix was of previous chaste character.

On the eighth day of October, 1897, the prosecutrix, then aged 23, came from the state of New York, where she had resided the previous nine years with her grandparents, to live in the home of her parents, in a village in Shelby county. On the evening of the ninth she met the defendant, a young man of 22, who had been reared on a farm in that neighborhood, at a dance in a neighbor's house. From that time until December 26th following the defendant was constant in his attentions to the prosecutrix, visiting and escorting her to church, to parties often, and on frequent drives. She testified in chief that on the evening of December 12th they went for a drive after church. That he put his arms around her, as he had done once before. "He then said that if anything happened to me at any time that he would stand by me, and that he thought lots of me, and more than of any other young lady he had kept company with, and he said that he would like to have me keep company with him only. That he would keep company with me and no other young lady, and he wished to have me do so also. We drove a little south of the Shelby county line, and turned the team around, and here is where he first attempted anything wrong with me. He said he would not leave me in any trouble. We had sexual intercourse and went home. This was on the twelfth day of December." On cross-examination she said: "I stated in Justice Fisher's court that all that was said by Wycoff after we had turned and gone south half a mile, and wanted intercourse, was that he would stay by me, and I still say this statement is true." On recall she said: "The third time defendant was with me was the first time he kissed me and embraced me. He said that he loved me, and called me

his darling. He was in my company every Sunday night after October 8th. He said that I looked better than other girls. On December 12th we had sexual intercourse, and he embraced and kissed me, and told me he would not leave me if I got in trouble. I believed him." She also stated that defendant was the father of her child, born November 27, 1898. The defendant testified: "I never, prior to December 15th, called Flora my darling. Never told her that I loved her, nor that she was the best looking girl I ever saw, nor that I liked her better than all other girls. I never told her to wear certain nice clothes." Again he says: "I did not tell the girl then that I loved her. I had my arm around her and kissed her. . There was quite a bit of kissing done by both of us. I generally put my arm around her whenever I took her buggy riding." Defendant admits having had sexual intercourse with the prosecutrix during the period of their intimacy. In view of the undisputed facts, her testimony as to what the defendant said and did to gain her consent to sexual intercourse is reasonable and consistent therewith, but not so as to his denials.

It is insisted in argument that as the prosecutrix acted improperly in going with the defendant at a certain time, and in permitting him to have improper familiarities soon after their first acquaintance, she was not of chaste character, nor influenced by any arts, flattery, or promises made by the defendant. It is certainly true that she did not conduct herself with propriety towards the defendant, else she would have repelled his improper advances at once; but was it not because of his conduct towards her that she permitted these improprieties? If he had never attempted, nor she permitted, undue familiarities, they would never have come into this trouble. It is just such improprieties that lead to seduction. Her statement in justice's court is not inconsistent with her other testimony. It does not follow that, because all that was said by the defendant after they turned south "was that he would stay by me," he did not say the other things testified to before they turned south. The pros-

ecutrix testified that on December 15th she went to a dance with one Archer; that she asked Archer to come again; told him that if he would keep company she would quit Wycoff; and that he never came, because she went with the defendant. It is insisted because of this that the defendant had not used seductive arts as claimed; but not necesarily so, as this was near the close of their intimacy.    In May, 1898, after the prosecutrix's condition was known, defendant came to her home, at the instance of her father, and in the presence of the defendant and her father she said the defendant was not guilty.    She says she did so to protect Wycoff from her father, and that the next morning she told her father the truth.    The circumstances confirm this explanation.

There is no evidence of unchaste conduct on the part of the prosecutrix until after her acquaintance with the defendant, nor that she received the company of any other man during their intimacy, except Archer, as already stated.

There is evidence that the prosecutrix received the attentions of one Flaugh after the defendant ceased to visit her, and evidence to show illicit relations with Flaugh during his visits.    Concede that she had illicit relations with Flaugh after December 26th, it does not necessarily follow that she was unchaste prior to the time that she yielded to the defendant, but rather that that was the result of her having so yielded.

*State v. Bollerman,* 92 Iowa, 460, is cited as supporting defendant's contention as to the insufficiency of the evidence.    In that case the prosecutrix testified that she "did everything in her power to keep from doing it," and this court said: "These facts should control the case, and no verdict should be permitted to stand upon such a state of the evidence." *State v. Haven,* 43 Iowa, 181, is also cited. In that case the prosecutrix, after testifying to their intimacy prior to July 7, 1871, the time of the alleged seduction said: "The night of July 7th he did not propose to

marry me. No promise was made, because I never came out and told him I would marry him until I wrote- that letter from mother's. I told him at first I didn't intend to marry anybody. Afterwards, I told him I never should marry any-one but him since this happened,. but not before I told him I would marry him." An agreement to marry was relied upon as inducing consent, but the evidence failed to show such an agreement prior to the alleged seduction. Therefore the case is unlike this in its facts.

II.   Defendant's counsel next complain of the instruc-tions, especially 8, 9, and 10.   Their criticisms are mainly of a general character.   They say "that the charge has running through it, from beginning to end, the thought that the trial was being had for the vindication of the complaining witness."   Of 8, 9, and 10 it is said:· "They are apparently drawn for the purpose of impressing the jury with the idea that the girl must be made out to be chaste, honorable, and upright, etc., no matter what becomes of the defendant, and the thought expressed therein is that the girl's character. must be sustained, even if to do this the defendant must be convicted."   Of the tenth it is further said:   "The court in giving this instruction seemed to be worried more about the fact as to whether or not this girl was to be deprived of the protection of the law than he was as to whether the defendant was entitled to an acquittal if the prosecuting witness was of unchaste character."   Of the fifteenth instruction it is said: '"This is simply another attempt of the court to excuse the conduct of the prosecuting witness."   As to these and simi-lar criticisms of the instructions we are of the opinion ·that they are not warranted and, are unjust to the court· that gave them.   They may be erroneous in some particulars, but as a whole they are full, fair, and impartial, and in the main, if not entirely, a concise, plain, and correct announce-ment of the law applicable to the case.   The eighth, ninth, and· tenth are the same as were approved in *Andre v. State,* 5 Iowa, 396, and did not embrace the objectionable language found in *State v. Carr,* 60 Iowa, 454.   The eleventh is said

to be substantially the same as in *State v. Hamann*, 109 Iowa, 646.   The fifteenth gives correctly the rules for determining the credibility of witnesses, and weighing their evidence as approved by this court in many cases.   The sixteenth is equally free from objection, as is also the thirteenth.

III.   Defendant's last contention is that there is not sufficient corroborative evidence of the prosecutrix tending to connect him with the offense charged.   The crime being established, the undisputed fact of their intimacy, their frequent opportunities, and of actual cohabitation, surely tend to corroborate her in saying that it was the defendant who seduced her.   We think the instructions correct, that the prosecutrix is sufficiently corroborated, and that the verdict and judgment are sustained by sufficient evidence.—Affirmed.

GRANGER, C. J., not sitting.