[No. 11839. Department One. July 23, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v.
GEORGE V. JONES, *Appellant*.[1]

SEDUCTION—CORROBORATION—EVIDENCE—ADMISSIBILITY. In a prosecution for seduction under promise of marriage, which, by the terms of Rem. & Bal. Code, § 2443, required corroborative evidence, testimony that the parties kept almost constant company with each other, to the exclusion of every one else, both before and immediately after the time of the alleged promise, is admissible, and its weight presents a question for the jury.

SAME—CORROBORATION—ATTEMPT TO PROCURE ABORTION—QUESTION FOR JURY. In a prosecution for seduction under promise of marriage, evidence of an effort to secure an abortion on the part of the accused is corroborative of the promise of marriage, and the sufficiency of evidence tending to show that fact is for the jury.

SAME—EVIDENCE—CONTINUANCE OF RELATIONS—ADMISSIBILITY. In a prosecution for seduction under promise of marriage, evidence is admissible showing that the parties kept company with each other for about six months after the seduction, as bearing on the question of consent obtained by promises.

SAME—EVIDENCE—SUBSEQUENT UNCHASTITY—ADMISSIBILITY. Evidence of a specific unchaste act of the prosecuting witness committed with a man other than accused subsequent to the alleged seduction is inadmissible as proof of unchastity, on the ground that such unchaste act may have resulted from the breaking down of maidenly modesty by the original act of seduction by the accused.

CRIMINAL LAW—TRIAL—COMMENT ON EVIDENCE. In overruling an objection to the cross-examination of a witness, who testified he had taken certain liberties with the prosecuting witness prior to the seduction, which sought to bring out that he had been telling the story about town, the comment of the court that "it is simply setting out the character of the witness," while unfortunate, cannot be deemed prejudicial, as it expresses no opinion as to the character of the witness or as to weight of his testimony.

SEDUCTION — PREVIOUS CHASTE CHARACTER — PRESUMPTIONS — INSTRUCTIONS. In a prosecution for seduction, an instruction to the jury that every female person is presumed to be of chaste character and that the burden rests upon the person calling it in question to show, by a fair preponderance of the evidence, that, at the time in

[1] Reported in 142 Pac. 35.

question, she was physically unchaste, is not erroneous on the ground that it overthrows the defendant's presumption of innocence by the counter presumption of womanly chastity.

CRIMINAL LAW—APPEAL—PRESERVATION OF GROUNDS—ADMISSION OF EVIDENCE. In a prosecution for seduction, the error of the court in refusing to admit questions to the prosecuting witness seeking to overthrow the presumption of her previous chastity and to affect her credibility should not be upheld merely from a hint in the record that they were excluded on account of some wrong upon the prosecuting witness, but the proper course would have been to make the offer of evidence in the absence of the jury, thus preserving a record of the motive of the court in excluding the questions so that it might be determined whether such action was justified.

WITNESSES—CROSS-EXAMINATION—SCOPE. In a prosecution for seduction, cross-examination of the prosecuting witness as to her previous unchastity, although not gone into in her examination in chief, is admissible as going to the previous chastity of the witness, which was directly in issue, and as going to her credibility.

CRIMINAL LAW—TRIAL—REFUSAL TO REOPEN CASE. The refusal of the court to reopen the case, in a prosecution for seduction after the evidence was closed, but before the jury was instructed, for the introduction of newly discovered evidence of admissions by the prosecuting witness of unchastity prior to the alleged seduction, was such an abuse of discretion as to warrant reversal, where there was nothing to indicate sharp practice on the prisoner's behalf.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered October 11, 1913, upon a trial and conviction of seduction. Reversed.

*E. K. Brown*, for appellant.

*F. A. Kern* and *E. Pruyn*, for respondent.

ELLIS, J.—This is an appeal from a judgment entered upon a verdict convicting the appellant of the crime of seduction. The appellant was barely eighteen years old, the prosecuting witness about six months his senior.

I. At the close of the state's evidence in chief, the appellant moved for an instructed verdict of not guilty, upon the ground that the testimony of the prosecuting witness had not been corroborated, as required by Rem. & Bal. Code, § 2443 (P. C. 135 § 381), which was in force at the time the

seduction was charged to have taken place. The appellant admits that the act of incontinence was sufficiently corroborated. He contends, however, that there was no corroboration as to the promise of marriàge. The prosecuting witness testified that the seduction took place during Christmas week of 1912, and that it was induced solely by the appellant's promise to marry her, made a few days prior thereto. The appellant claimed that the first act occurred prior to December 18, 1912, and that the relation commenced and was continued for some months solely through mutual inclination, without any promise of marriage.

The corroborating circumstances relied upon by the state were of two kinds. Several witnesses testified that the appellant and the prosecuting witness kept almost constant company with each other, to the exclusion of every one else, being together almost every evening covering the period from some time in December, 1912, to March, 1913. Some of these could not say definitely just when this intimate association began, but at least one witness was quite certain that it began about the first or middle of December, 1912. Under the statute then in force, where the promise of marriage was relied upon as the seducing means, corroboration of the female as to the promise of marriage was undoubtedly necessary. In such cases, under similar statutes, it has often been held that corroboration sufficient to sustain a conviction is furnished by proof of circumstances which usually attend an engagement to marry, such as constant and exclusive attention to the female by the accused and the seeking of her society in preference to that of other women.

"The promise of marriage is not an agreement usually made in the presence or with the knowledge of third persons. Hence the supporting evidence possible in most cases, is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her sex, and

all those facts of behavior toward her, which before parties
to an action were admitted as witnesses in it, were given to a
jury as proper matters for their consideration on that issue."
*Armstrong v. People,* 70 N. Y. 38, 44.

See, also, *State v. Curran,* 57 Iowa 112, 49 N. W. 1006;
*State v. McClintic,* 73 Iowa 663, 35 N. W. 696; *State v.
Wycoff,* 113 Iowa 670, 83 N. W. 713. In the nature of the
case, the corroborative evidence must nearly always be cir-
cumstantial. No circumstance could be more persuasive than
the fact that the accused and the prosecuting witness showed
a marked preference for each other's society to the exclusion
of others, both before and immediately after the time of the
alleged promise. The evidence referred to was admissible as
corroborative of the seducing promise. Its weight was for
the jury.

In April, 1913, the prosecuting witness, suspecting her
condition, consulted one Dr. Harrell, who confirmed her sus-
picions. She told appellant of this fact, and he also con-
sulted this same physician, and received the same informa-
tion. Thereafter, the appellant informed his mother of the
situation, and she, her sister, and the prosecuting witness
also visited Dr. Harrell, who called in another physician, and
after a physical examination, advised the three women that
the girl was pregnant. The appellant's aunt testified that
his mother then expressed herself as satisfied that such was
the girl's condition. Shortly afterwards, the appellant's
mother and aunt made an appointment to visit another phy-
sician with the prosecuting witness. The prosecuting witness
testified that the mother stated that she thought this doctor
would help her out. The appellant's mother at no time de-
nied making this statement. Pursuant to this appointment,
appellant's mother and aunt and the prosecuting witness vis-
ited the physician in question, and, while they were there, the
appellant also came in, but there is no evidence that he took
part in the conversation. The physician testified to the ef-
fect that the prosecuting witness requested him to help her

out of her predicament, which request was refused. The request, however, was made in the physician's private office, and not in the hearing of the other three. In view of the failure of the appellant's mother, when on the witness stand, to deny that this visit was inspired in the hope of procuring an abortion, and in view of the fact, also undisputed by her, that, prior to this visit, she was satisfied of the condition of the prosecuting witness, and, in view of the fact that the appellant himself visited the office of this physician at the same time that the other three participants were there, it is difficult to escape the force of this visit, under all the circumstances, as tending to show that all four of the participants therein knew and approved of the intention on the part of the prosecuting witness, if possible, to procure an abortion. Shortly afterwards, the appellant's mother and aunt made an engagement with the prosecuting witness to visit a justice of the peace. Pursuant to that engagement, the three met in the office of the justice, and the prosecuting witness there signed a release of claim upon the appellant for further liability for her unborn child, in consideration of the payment of $50. The appellant's mother testified, as leading up to this payment, as follows:

"We called her up to find that out, to see what she wanted done, and she said that some one had told her it would take $50 to have an operation, and that was the amount she wanted, but she wanted it with the privilege of getting more because that wasn't enough, and I told her we could not give her that much—that we didn't have it. Q. Did you give her any money to have an operation? A. No, sir, I gave it to her to help her out."

While the appellant testified that he did not know of his mother's visit to Dr. Harrell, and did not authorize any of the things done by her, his participation in the culminating visit to the other doctor was evidence tending to show that he knew of, and consented to, the other visits. He also testified that he knew nothing of his mother's visit to the justice of the peace, but admitted that he afterwards personally re-

paid the loan which the mother made in order to secure the
$50 paid to the prosecuting witness. All of these things had
a strong tendency to prove that, throughout, the mother and
aunt were acting as his agents in the premises. The question
was one for the jury. Counsel for the appellant admits that
proof of an effort to secure an abortion on the part of the
accused would be corroborative of the promise of marriage.
*People v. Orr,* 36 N. Y. Supp. 398. We think this evidence,
taken as a whole, had a corroborative tendency. Its weight
was for the jury.

II. The prosecuting witness and several others were per-
mitted, over appellant's objections, to testify that the ap-
pellant and prosecuting witness kept company with each
other for about six months after the alleged seduction. The
prosecuting witness also testified that she and the appellant
continued acts of incontinence until the latter part of March,
subsequent to the alleged seduction. The admission of this
testimony is assigned as error. The testimony of the pros-
ecuting witness touching the subsequent acts was admitted
without objection. In any event, its admission was not er-
ror. *State v. Robertson,* 121 N. C. 551, 28 S. E. 59; *Sher-
wood v. Titman,* 55 Pa. St. 77. There can be no question as
to the proper admission of the evidence of continued associa-
tion.

"The conduct and relation of the parties after, as well as
before, the date of the alleged seduction, may be shown. Such
evidence is relevant to show that consent was obtained by
promises and inducements and what they consisted of." Un-
derhill, Criminal Evidence (2d ed.), § 388, p. 666.

See, also, 11 Enc. of Evidence, p. 698; *State v. Curran,
supra.*

III. The court refused to permit the appellant to intro-
duce evidence of a specific unchaste act of the prosecuting
witness committed with a man other than appellant some
time after the alleged seduction. It is urged that, inasmuch
as the court admitted evidence of illicit relations between the

appellant and the prosecuting witness after the alleged seduction, the defense permitted should be as broad as the prosecution. This, of course, is usually true, but has no application to the case here presented. The evidence of subsequent acts of unchastity with other men should be excluded for the very reason that evidence of such subsequent acts with the accused should be admitted. The latter are admitted as tending to show a consent induced by promise of marriage, because they would probably result from the same inducing cause. The former are inadmissible because the subsequent unchaste acts with other men might result solely from the breaking down of maidenly modesty by the original act of seduction.

"Actual unchastity, i. e. criminal intimacy and lascivious conduct with other men existing after the date of the alleged seduction, is excluded as proof of the fact that prosecutrix was unchaste by the probability that it resulted from it." Underhill, Criminal Evidence (2d ed.), § 392, p. 672.

See, also, *Mann v. State*, 34 Ga. 1; *State v. Wells*, 48 Iowa 671; *State v. Deitrick*, 51 Iowa 467, 1 N. W. 732; *Boyce v. People*, 55 N. Y. 644.

IV. During the cross-examination of a witness for the appellant, who testified that he had taken certain liberties with the prosecuting witness prior to the alleged seduction, the prosecuting attorney sought to show that the witness had been telling the story about town. This was objected to. In overruling the objection, the court remarked, "It is simply setting out the character of the witness." It is urged that this was an improper comment upon the evidence. The court evidently made the statement for the sole purpose of explaining to counsel his reason for permitting the questions. He expressed no opinion as to the character of the witness or as to the weight of his testimony. The questions were clearly admissible upon the very ground stated by the court. While the language of the court was unfortunate, it can hardly be regarded as prejudicial. If every such remark

of a court in the course of a long trial were held ground for
reversal, it would be almost impossible to sustain a conviction
in any case.

V.   The court instructed the jury to the effect that it is
the law in this state that every female person is presumed to
be of chaste character and that when her chastity is called
in question, the burden rests upon the person calling it in
question to show, by a fair preponderance of the evidence,
that, at the time in question, she was physically unchaste.
The appellant earnestly insists that this was error.   It is ar-
gued that, inasmuch as the previous chaste character of the
prosecuting witness in a case of seduction is, under our stat-
ute, one of the essential elements of the crime, and, inasmuch
as every person accused of crime is entitled to a presumption
of innocence, therefore, the usual presumption of chastity
does not exist in such cases.

In *State v. Workman*, 66 Wash. 292, 119 Pac. 751, quot-
ing from 33 Cyc. 1482, we said:

"When the statute makes carnal knowledge of a female of
previous chaste character under a specified age rape, chastity
is presumed until the contrary is proved, and want of chastity
in such cases must be shown by specific acts and not by gen-
eral reputation.   33 Cyc. 1482."

Though the particular point here under discussion was
necessarily involved in that case, the presumption of chastity
was not questioned.   The quotation was cited not to that
point, but to the question of the character of evidence admis-
sible to prove unchastity.   The use of the quotation can
hardly be termed *dictum;* neither can it be held binding upon
the court on the point not there under discussion.

There is a sharp conflict of authority upon this question,
but, after a most careful consideration of the subject, we be-
lieve that both the better reason and the more persuasive au-
thorities sustain the view expressed in the above quotation.
Both the presumption of chastity and the presumption of in-
nocence are founded in prevailing experience.   Chastity is the

rule; unchastity is the exception. Innocence is also the rule; guilt is the exception. These presumptions are evidential presumptions. They are both, in their last analysis, competent evidence to the point involved. If the presumption of chastity, which is only a recognition of the prevailing purity of the women of this state, and which is indulged as to womankind in many states notwithstanding the presumption of innocence, is to give way in this state to the no more reasonable and no more sacred presumption of the innocence of the accused, it ought to be only upon the strongest reasons of public policy. Such reasons do not exist. Any unchaste woman who would institute a prosecution for seduction would readily make the *prima facie* proof of prior chastity by her own testimony. The defendant would then, in any event, have to meet the *prima facie* case. The advantage of the cynical, not to say barbarous, assumption of a lack of chastity, which would cast the burden of proof in the first instance upon the state, is too slight and chimerical to weigh in the balance against the decency of the contrary assumption. Every exigency of such a case is met by the reasonable rule that these two conflicting presumptions, both of which are, in their very nature, presumptions of an evidential character, should be submitted to the jury like other conflicting evidence.

The supreme court of Iowa, in a well reasoned opinion, approving an instruction similar to that here assailed, and under a statute similar to ours, said:

"The defendant argues that, to presume in favor of the character of the woman, in this case, is to presume against his innocence. But, to our minds, this is not so. He will be presumed innocent of the fact—the act charged—whilst the presumption may be in favor of the rectitude of her character. And there seems to us no inconsistency in applying these presumptions in this manner. If the prosecution were held to show such a character, in the first instance, the lightest amount of evidence would be sufficient to make a *prima facie* case, and the burden would still be on the defendant; and there does not seem to be much weight in the argument, which

is satisfied with this merely formal compliance with the rule, whilst, on the other hand, there is a substance in the presumption of innocence and uprightness, which requires a force of evidence to overcome. The above cited cases from New York are placed upon this same ground, applying the assumption to chastity in fact, and arguing that chastity is the general law of society, and a want of it, the exception. See *Crozier v. People*, 1 Park. Cr. R., 457. And the same argument applies with equal force to chastity of character. It does so of course. They are the same thing in substance when regarded in relation to this rule. It is our opinion that the presumption of a 'chaste character' extends to the woman in this case, and that the contrary is to be shown." *Andre v. State*, 5 Iowa 389, 398, 68 Am. Dec. 708, 712.

See, also, *State v. Burns* (Iowa), 78 N. W. 681; *State v. Drake*, 128 Iowa 539, 105 N. W. 54; *Crozier v. People*, 1 Parker Cr. Rep. (N. Y.) 453. The illogical ground of the contrary view is clearly expressed by the supreme court of Mississippi as follows:

"It remains to consider the other ground of contention on this point, which is that the previous chastity must be averred in the indictment and established in the evidence; otherwise the presumption of the defendant's innocence will be overthrown by the presumption of the woman's purity. To put it otherwise, the strength of the presumption of the defendant's innocence cannot be weakened by any counter-presumption of womanly virtue. This same view was ably urged upon our attention in the case of *Hemingway v. The State*, 68 Miss. 371. We need look no farther than the opinion we then delivered in order to silence the present contention: 'By this second proposition we suppose it is meant to be said that the presumption of innocence is affected or destroyed in part by the legal presumption of the correctness of the records, and that this favored presumption of innocence cannot be met by another presumption, but must be destroyed by positive proof. This contention rests upon the unsubstantial ground that the general presumption of innocence is irrebuttable by any other and favored presumption. The rule is, in conflicting legal presumptions, the special and favored must prevail or take precedence over the general, and the practical operation of this rule we see constantly exemplified in trials.

for murder.   In these trials for even capital offenses, we shall constantly find the legal presumption of malice arising from the use of a deadly weapon, and we shall see the presumption taking precedence over the general presumption of innocence, in the absence of any other evidence showing circumstances of justification or excuse for the homicide  . . .   But, after all, it remains to be said that  . . .   all that was done was to permit the jury to be informed that there was a legal presumption of the correctness of the official books, and, if this was not permissible, then it must be conceded that the presumption of innocence is irrebuttable by any other presumption  . . .   a proposition not to be tolerated in a court of law—for conflicting presumptions must always go to the jury as other conflicting evidence.' "   *Ferguson v. State,* 71 Miss 805, 811, 15 South. 66, 42 Am. St. 492.

In *People v. Brewer,* 27 Mich. 134, 137, Judge Cooley said:

"The last error we shall notice is, that the court erred in instructing the jury that the law presumes a woman to be chaste until the contrary is shown.   We believe this instruction to be correct.   The presumptions of law should be in accordance with the general fact; and whenever it shall be true of any country that the women, as a general fact, are not chaste, the foundations of civil society will be wholly broken up.   Fortunately in our own country an unchaste female is comparatively a rare exception to the general rule; and whoever relies upon the existence of the exception in a particular case should be required to prove it.   *Crozier v. People,* 1 Park. Cr. 457; *People v. Kenyon,* 5 Park. Cr. 286; *Kenyon v. People,* 26 N. Y. 204; *Andre v. State,* 5 Iowa 398; *People v. Millspaugh,* 11 Mich. 238.   The case of *West v. The State,* 1 Wis. 217, which seems to hold otherwise, was decided upon the phraseology of the Wisconsin statute, which was thought to make 'the previous chaste character' of the person seduced an ingredient in the offense, to be made out by proofs.   Our statute is very simple, and merely provides that, 'If any man shall seduce and debauch any unmarried woman, he shall be punished,' etc.—Comp. L. 1871. § 7697."

It would seem that Judge Cooley was not favorably impressed with the view that the use of the words "previous chaste character" made any material difference.   At least, he

did not lend it the support of his approval. He merely says that in *West v. State,* 1 Wis. 217, these words were thought to be controlling. It seems to us that the courts holding that there is no presumption of chastity in such cases place too much stress upon the words "of previously chaste character," found in many of the statutes, as in ours. Rem. & Bal. Code, § 2441. The previous chastity of the female is a necessary element of the crime in the sense that it is involved in the issue, in any case.

"It is not, indeed, expressed in our statute, as it is in the statute of New York and of some of the other states that the woman should have been of previous chaste character. But it is plainly implied. The legislature never intended to send a man to the penitentiary for having had illicit connection with a prostitute or a woman of easy virtue, where she had consented, even under a promise of marriage." *Polk v. State,* 40 Ark. 482, 486, 48 Am. Rep. 17.

See, also, *Wilson v. State,* 73 Ala. 527. This is implied from the very nature of the offense, and in the term "seduce," found in many of the statutes. If the previous chastity were not an essential element of the crime, proof of its absence would be no defense. Yet, in the absence of the words "of previous chaste character" or "of good repute," a majority of the cases support the view that, in prosecutions for seduction, the chastity of the female is presumed, and that the burden is upon the defendant to show her lack of chastity, if he relies upon that defense. See note to *State v. Turner,* 82 S. C. 278, 64 S. E. 424, 17 Am. & Eng. Ann. Cas. 88; *Polk v. State* and *Wilson v. State, supra; Suther v. State,* 118 Ala. 88, 24 South. 43; *Weaver v. State,* 142 Ala. 33, 39 South. 341; *McTyier v. State,* 91 Ga. 254, 18 S. E. 140; *O'Neill v. State,* 85 Ga. 383, 11 S. E. 856; *Tedford v. United States,* 7 Ind. Ter. 254, 104 S. W. 608; *People v. Bressler,* 131 Mich. 390, 91 N. W. 639; *People v. Brewer,* and *Ferguson v. State, supra; Flick v. Commonwealth,* 97 Va. 766, 34 S. E. 39; *Mills v. Commonwealth,* 93 Va. 815, 22 S. E. 863. We hold that the instruction was, in the main, correct.

The court should have added, however, a statement to the effect that, if there was evidence sufficient to create a reasonable doubt as to the chastity of the prosecuting witness, there could be no conviction.

VI.   On cross-examination, the prosecuting witness was asked: "Who was the first person that you ever had sexual intercourse with?" Upon objection, this question was ruled out, upon the ground that it was a part of the defendant's case.   She was also asked: "Did you ever have sexual intercourse with anyone before you came to Ellensburg?" To this she answered, "No, sir," when objection was made and sustained, in effect, in view of the foregoing question, striking the answer.  These questions were objectionable in that they both failed to include the element of volition.  They were not excluded, however, upon that ground.  Had the objection been placed upon that ground, doubtless the questions would have been amended.  They would then have been proper for two reasons: First, as going to the previous chastity of the witness, which was directly in issue; second, as going to her credibility.  The presumption of previous chastity is, as we have seen, purely evidential in its nature.  It carries no greater weight than if the prosecuting witness had testified to that effect.  The rule limiting the cross-examination of a witness to things testified to in chief, therefore, does not apply.  As said by the supreme court of Iowa in a similar case:

"The questions asked the witness as to her unchastity were proper upon the cross-examination.  The law raises the presumption as to her chastity, and she appeared upon the stand claiming the benefit of that presumption.  In accusing the prisoner of the crime she declared her own chastity.  She was then in the position of one pressing the fact of her own purity as the ground of defendant's conviction, and, though she had not in words testified to that effect, yet her act in prosecuting defendant and the presumption of the law placed her in the position she would have occupied had she given such evidence.  For these reasons the questions propounded by defendant were proper." *State v. Sutherland*, 30 Iowa 570, 573.

We think the rule there announced is correct. There is some hint in the record that the court excluded these general questions on account of some wrong which had, at some previous time, been perpetrated upon the prosecuting witness. There is nothing in the record to enable us to know whether the court was justified in refusing to permit these general questions for any such reason. The proper course would have been to make the offer of the evidence in the absence of the jury, thus preserving a record of the entire motive of the court in excluding the questions. His ruling upon such an offer would have saved the appellant's rights, and, at the same time, would have permitted other questions so framed as to procure a statement from the prosecuting witness as to previous acts of unchastity, exclusive of the incident vaguely referred to in the record. There is not sufficient in the record to enable us to say that the court was justified in refusing questions of this character unless the appellant would waive the incident referred to.

Objections were also sustained to questions propounded on cross-examination of the prosecuting witness as to whether she had not admitted to another girl that she had had improper relations, prior to the alleged seduction, with a certain young man. Objection was also sustained to a question whether she had taken certain indecent liberties with another young man prior to her acquaintance with the appellant. Under the rule stated, these questions were proper cross-examination in a case of this character. In all such cases, the courts, whether indulging the presumption of prior chastity or not, hold that great latitude in cross-examination should be permitted. *People v. Abbott,* 19 Wend (N. Y.) 192; *People v. Betsinger,* 11 N. Y. Supp. 916; *Brennan v. People,* 7 Hun (N. Y.) 171; *State v. Johnson,* 28 Vt. 512; *State v. Reed,* 39 Vt. 417, 94 Am. Dec. 337; *State v. Hollenbeck,* 67 Vt. 34, 30 Atl. 696; *Benstine v. State,* 70 Tenn. 169, 31 Am. Rep. 593; *Brown v. Commonwealth,* 102 Ky. 227, 43 S. W.

214; *Creighton v. State,* 41 Tex. Crim. 101, 51 S. W. 910. The prosecuting witness had testified that the appellant had seduced her by a promise of marriage. In any view of the matter, therefore, the questions propounded were proper on cross-examination as going to her credibility. *State v. Coella,* 3 Wash. 99, 28 Pac. 28; *State v. Workman,* 66 Wash. 292, 119 Pac. 751; *Titus v. State,* 66 Tenn. 132; *Camp v. State,* 3 Ga. 417; *State v. Murray,* 63 N. C. 31.

VII. After the evidence was closed, and before the jury had been instructed, the attorney for the appellant, in the presence of the prosecuting attorney, asked the court to re-open the case and permit one of the physicians who had formerly testified to be recalled. Appellant's attorney stated that the physician, only a few minutes before, had stopped him on the street, and informed him that, if recalled, he would testify that when the prosecuting witness was in his office about June 1, 1913, she told him that she had committed acts of incontinence with other men than the appellant at times prior to her first relations with the appellant; and that the physician stated that, up to that time, he had forgotten this circumstance. The court refused to re-open the case, to which the appellant excepted. There can be no question but that this evidence was competent and went to a vital issue in the case. There was nothing in the circumstances tending to show any sharp practice on the part of the appellant or his attorney in failing to introduce it at the proper time. While ordinarily matters of this kind are within the discretion of the trial court, it does not follow that, even in such a case, an abuse of discretion is impossible. We think, in view of the character of the charge, and the broad latitude necessarily permitted to the state in the introduction of evidence tending to support the charge, that it was an abuse of discretion to refuse to open the case for the admission of this evidence. *Schonberger v. Commonwealth,* 86 Va. 489, 10 S. E. 713; *Dickinson v. State,* 3 Okl. Cr. 151, 104

Pac. 923; *Etly v. Commonwealth,* 130 Ky. 723, 113 S. W. 896.

For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.

Crow, C. J., Main, Gose, and Chadwick, JJ., concur.