KERR VS UNITED STATES.

Opinion rendered Sept. 26, 1907.

.(104 S. W. Rep. 809).

1. *Criminal Law—Instructions Given by Court.*

It was proper to refuse a request to charge which was well covered by general charge of the court.

2. ` *Seduction—Previous Character.*

It was erroneous to give instruction that presumption of previous chaste character of the female seduced was overcome by presumption of innocence of defendant.

3. *Same.*

By Mansf. Dig. § 1587 (Ind. Ter. Ann. St. 1899 § 930), the penalty of a person convicted of obtaining carnal knowledge of any female by means of promise of marriage is imprisonment, not to exceed two years. It is held that an indictment was not demurrable because it failed to allege that female was previously of chaste character.

4. *Same.*

The previous chastity of the female alleging seduction is a necessary element of seduction.

5. *Same.*

The presumption is that a female alleged to have been seduced is virtuous and it rests with defendant to prove want of chastity at time of alleged intercourse.

6. *Criminal Law.*

When it is proved that a female alleged to have been seduced is unchaste it is presumed that she continues so.

Error to the United States Court for the Southern District of the Indian Territory; before Justice J. T. Dickerson, June 17,·1905.

S. E. Kerr was convicted of seduction, and he brings error. Reversed.

The defendant was charged in an indictment in the court below with the seduction of one Nora Hiser, who, at the

time the offense is alleged to have been committed, was about 19 years of age. Her testimony was that under promise of marriage the defendant had seduced her and begot her with child, which was afterwards born to them. In corroboration of her testimony the government introduced at the trial testimony showing that long before and after the time when the child was evidently begotten the defendant was a constant visitor at her home, taking her out buggy riding, escorting her to picnics, churches, and other public places, and treating her generally as a lover. In addition to this there were offered and admitted in evidence 20 letters from him to her, 8 of which were written before the conception, and the others afterward. They all express the very tenderest feelings of love and affection, but none of them mention directly the engagement of marriage. The defendant put upon the stand one 'B. C. Graham, who testified that from February, 1899, to December of the same year he had three times had sexual intercourse with the prose-cuting witness. She, in her testimony, denied this, but admitted that they had been sweethearts, and that she at one time had been engaged to him. It was in proof that at one time prior to the occurence charged in the indictment a man by the name of Jack Moore was seen to come from her room early in the morning in his bare feet, holding his hat as if to hid his face. Jack Moore was her cousin and lived about 100 yards from where she lived. He had been with her brother, with whom she lived, and others, harvesting the whole of the day before. The others remained at her brother's house during the night, and it was one of these who testified to the conduct of Moore. This statement is denied by the prosecuting witness, by Moore, and by others who stayed at the house that night. The defendant rested his case without testifying himself, and without offering any testimony as to the bad character or reputation for chastity of the prosecuting witness. The government, on rebuttal, proved by a number of witnesses her good character.

The defendant then offered a witness to prove her bad reputation, which was objected to by the government on the ground that the burden was on the defendant to prove want of chastity on the part of the woman, and having rested his case, he was too late.    The court sustained the objection, to which exception was saved.

R. T. Jones, for plaintiff in error.

Geo. R. Walker, U. S. Atty., and James E. Humphrey, Asst. U. S. Atty., for defendant in error.

CLAYTON, J. (after stating the facts as above).    There are 17 specifications of error assigned.    They are long and argumentative, and it would require too much space in this opinion to set them out in full.    They occupy 12 pages of the printed brief.    A demurrer was filed to the sufficiency of the indictment, on the ground that it did not allege that the prosecuting witness was chaste previous to the alleged act of intercourse.    The demurrer was overruled, and exception saved.    This alleged error constitutes the first assignment. The court, in its charge, in defining chastity, said: "By chaste character in a case of this kind is meant virtue."    This definition was made the grounds of the seventh specification of error. The court, in its charge, further said:    "You are further instructed that the prosecutrix is presumed to be virtuous, and that the burden is upon the defendant to prove her want of virtue and chastity at the time of the alledged intercourse."    This is the ninth error assigned.    The thirteenth specification is that the court erred in refusing an instruction to the effect that mere proof of general reputation for chastity is not sufficient, but it must be shown that the woman possessed actual, personal chastity.    This was substantially given by the court in its general charge, and we will notice it no further.    The fourteenth assignment is that the court refused to instruct the jury that, "while the previous chaste character of the female is presumed, such presumption is overcome by the presumption of the inno-

cence of the defendant." This is not the law. The defendant is presumed to be innocent until his guilt is shown beyond a reasonable doubt; and therefore the government must prove it to that degree of certainty. But the prosecutrix is presumed to be chaste; and therefore, the act of sexual intercourse, procured by the promise of marriage, being proven, the burden is on the defendant to introduce sufficient proof to raise a reasonable doubt as to her chastity. Under our statute, it is, like justifiable homicide or insanity, on an alibi, a matter of defense.

Having disposed of the thirteenth and fourteenth assignments, and as the first, seventh and ninth relate substantially to the same question, we will consider them together. The demurrer was properly overruled. The statute is as follows, section 1587, Mansf. Dig. (Ind. Ter. Ann. St. 1899, § 930): "Any person who shall be convicted of obtaining carnal knowledge of any female by virtue of    *    *    *    any false or feigned promise of marriage, shall, on conviction, be imprisoned not exceeding two years," etc. Seduction is not a common-law offense. It is one that is created by the statute, and therefore we must go to the statute for its definition; and in such cases it is usually, if not always, sufficient ,to set out the offense in the indictment in the language of the statute. "In drawing indictments under a statute which enacts and defines the offense, it is best, with rare exceptions, to follow the exact words of the statute, for then all doubt will be avoided, and simply the proof demanded by law, and no more, will be called for by the indictment." Bishop, New Cr. Proc. 612. And speaking generally of indictments for the crime of seduction, Mr. Bishop (section 645, Id.) says: "In general it is sufficient to charge this offense in the words of the statute, adding the time and place and the names of persons." The indictment in this case is in the language of the statute, and is therefore good. Putman vs State, 49 Ark. 249, 5 S. W. 715; Bodenhamer vs State, 60 Ark. 10, 28 S. W. 507; Cheaney vs State, 36 Ark. 74.

The definition of chastity given by the court, that it meant virtue, that the woman must have been "chaste and virtuous" as the court says in another part of the charge, is sufficient to convey to the mind of any man of ordinary intelligence that the words "chaste" and "virtuous," as used in relation to woman, as in this case, did not mean that she should possess all of the cardinal virtues, but only that she should have been virtuous in the sense that she was chaste. The charge of the court "that the prosecutrix is presumed to be virtuous, and that the burden is on the defendant to prove her want of virtue and chastity at the time of the alleged intercourse," is a correct statement of the law. While the statute does not, in terms, provide that in seduction the woman must have been chaste, it is implied, and it has always been held by the courts, as a necessary element. In Polk vs State, 40 Ark. 486, 48 Am. Rep. 17, the Supreme Court of that state say: "It is not, indeed, expressed in the statute, as it is in the statute of New York and some of the other states, that the woman should have been of previous chaste character, but it is plainly implied.    *    *    *    Since in the female sex chastity is the rule, and want of it the exception, the presumption is in favor of virtue. No evidence is required to establish it in the first instance; and the burden is on the defendant, if he would assail it, notwithstanding the presumption of his innocence." And cite in support of the rule Andre vs State, 5 Iowa, 398, 68 Am. Dec. 708; Boak vs State, 5 Iowa, 430; State vs Higdon, 32 Iowa, 262. See, also, Caldwell vs State, 73 Ark. 139, 83 S. W. 929, 108 Am. St. Rep. 28.

It seems from the record that, after the jury had been out considering of their verdict for about 20 hours the court called them into the courtroom, and among others gave to them the following additional instruction: "If you believe from the evidence that the prosecutrix had had intercourse with the witness Graham some months prior to her engagement,

if any engagement there was, with the defendant, but had reformed and was leading an absolutely virtuous life at the time the defendant was keeping company with her and at the time he became engaged to her, and was at that time a chaste and virtuous woman, and you further believe beyond a reasonable doubt that she had sexual intercourse with the defendant under and by virtue of a promise of marriage made to her by him, and that that was the sole and only reason for her permitting the defendant to have intercourse with her, then your verdict should be for the government, and you should convict the defendant, notwithstanding the previous acts with witness Graham." This instruction was given on the hypothesis that the jury believed the testimony of Graham, who testified that he had had sexual intercourse with the woman as late as a few months before the time of the alleged seduction. It is the law that when a woman is proven to be unchaste, the presumption is that she so continues. People vs Squires, 49 Mich. 487, 13 N. W. 828. And as in this case the contention of the government was that she was not unchaste at all, and as there was absolutely no proof of reformation after the alleged act with Graham, the instruction ought not to have been given, because there was no evidence to support it; or, at best, if given, the jury should have been informed of the presumption of continued unchastity after the fact had been established. Had they been informed of that, and had they believed the testimony of Graham, the defendant would have been entitled to a verdict. If Graham's testimony is true, the conviction is wrong. It is folly to claim that a woman who during the period of 10 months, if Graham's testimony is to be relied on, was shown to be unchaste, committing the act at various times during that period, and a few months later is found with another man, guilty of the same impure conduct, that the short lapse of time between leaving off with the one and beginning with the other is evidence of reformation;

and that is all the proof there was of it. This charge was given after argument, and counsel had no opportunity of presenting to the jury any argument upon the point, and the record discloses evidence of the fact that it was this additional charge that secured the verdict. It became to the jury. the pivotal point in the case, and they were required to settle it upon the imperfect charge of the court, without any aid from counsel.

The defendant requested the following instruction: "You are instructed that the defendant in this case cannot be convicted upon the strength of any promises made by the defendant to the prosecutrix subsequent to the birth of her said child, and that the evidence of such promises then made are only to be considered by you as circumstances to corroborate the testimony of the prosecutrix that she was seduced by the defendant upon the express promise there made to marry her, given by him to her at the time she submitted to his embrace." When it is considered that the proof of the promise of marriage, aside from the statement of the woman, largely depended upon the evidence of that fact contained in the letters of defendant, written to the prosecutrix, and that of the 20 letters admitted in evidence, 12 of them were written after the act of seduction, and a number of them after the birth of the child, and that the later ones contained stronger evidence of a promise than the earlier ones and that the court had not in its general charge, instructed the jury on this point the requested instruction, we think, ought to have been given.

As to the other assigned errors, after a careful examination, we think there is no error in them. One of them is that at one time during the trial the judge, speaking of the woman, called her a "girl." Of course, there is nothing to this exception. Another is that the prosecutrix, having testified that while she knew there was something the matter with her, did not know or realize that she was with child until about the time of its birth, the court sustained an objection to the proffered

testimony of two doctors to prove that it would not be possible for a woman to carry a child up to birth without knowing it. It was not material whether the woman knew that she was pregnant or not, and therefore the court properly excluded the evidence.

For the errors above pointed out, the judgment of the court below is reversed.

GILL, C. J., and TOWNSEND and LAWRENCE, JJ., concur..