[No. 19187.    Department Two.    September 1, 1925.]

# THE STATE OF WASHINGTON, *Respondent*, v. JOE PANOVICH *et al.*, *Appellants*.[1]

INTOXICATING LIQUORS (50)—OFFENSES — JOINTIST — EVIDENCE — SUFFICIENCY.  A conviction of being jointists is sustained by evidence of a cleverly concealed cache, in a soft drink place, containing flasks of moonshine whiskey, where it appeared that similar empty flasks, freshly washed, were found, the place was generally reputed to be a joint, and intoxicated persons were arrested there, and one of the operators, when faced with the discovery of the cache, remarked to the officers, "you finally found it."

CRIMINAL LAW (448)—APPEAL — HARMLESS ERROR.  Prejudicial error can not be based on the insufficiency of the form of a question asking a witness if he knew "the reputation of a place as being a place where intoxicating liquors were being sold," where it appears from the context that the jury could not have been misled; especially where there was no direct objection to the form.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered September 30, 1924, upon a trial and conviction of being jointists. Affirmed.

*Turner, Nuzum & Nuzum*, for appellants.

*Chas. H. Leavy, A. O. Colburn* and *M. E. Jesseph*, for respondent.

FULLERTON, J.—The appellants, Panovich, on a trial by jury, were convicted of the crime of opening up, maintaining and conducting a place for the unlawful sale of intoxicating liquor.  The evidence disclosed that the appellants were maintaining and conducting a place of business in the city of Spokane wherein soft drinks, cigars, cigarettes, tobacco, gum and other similar articles were sold.  The police officers of the city named, suspecting that the appellants were also engaged in the unlawful sale of intoxicating liquor at the place, raided it under a search warrant.  In the basement of the place

[1]Reported in 238 Pac. 903.

they found a concealed cache containing ten pints of intoxicating liquor, commonly known as moonshine whiskey. The cache was somewhat cleverly concealed. There was a post extending from the concrete floor of the basement to joists on which the floor above was laid, similar in appearance to other posts supporting the joists. It had nails driven into it, giving it the appearance of being toe-nailed to the joist. It was, however, removable, and on being removed there was found a hole cut in the basement floor, small enough to be entirely covered when the post was in place. Beneath, the earth was hollowed out, making a receptacle of considerable capacity. In this hollowed out place the liquor was found.

The post bore evidence of frequent removals. It was so constructed as to be capable of removal only by moving the top in one direction, and in this direction the joist was worn smooth. The surroundings of the post were clean; that is to say, there was no accumulation of cobwebs, dirt or dust surrounding it. So, also, the flasks containing the intoxicating liquor found in the cache had a fresh appearance, indicating that they had not been long therein. In a carton, on a pile of coal in the basement, was found a number of whiskey flasks, freshly washed, similar in kind to those containing the liquor found in the cache. One of the officers making the search was alone in the basement at the time the cache was found. After finding it, he called to the officer above and that officer came down into the basement, bringing the defendants with him. He testifies that one of the defendants, seeing that the cache had been uncovered, said to him, "You finally found it, did you? Who tipped you off?"

The evidence further disclosed that Joe Panovich was the owner of the place, and had been conducting it for some seven months immediately prior to the raid.

The other of the appellants was a brother of the first, and was employed by him at a wage of three dollars per day. In the absence of his brother he had sole charge of the business and at times ordered and paid for necessary supplies.

There was evidence by the officers that intoxicated persons had been arrested in and near the place, but whether during the time the appellants were conducting it, is not clear. There was evidence also that the place was generally reputed to be a place where intoxicating liquors were sold, and evidence that the stock of goods on hand for the sale of which the place was ostensibly maintained was of no considerable value. The appellant owner testified that, in addition to the wages paid his employee, he paid a rental of $50 per month, and some $4.50 per month for light and water; that the cost to him for the soft drinks sold averaged about $50 per month, and that the cigars and cigarettes sold cost him from $100 to $120 for a like period. The profits made on the sales were not shown, but it was shown that the appellants had active competition—that there were six places in the immediate vicinity where like goods were sold.

There was no evidence of actual sales of intoxicating liquors at the place. Each of the appellants denied knowledge of the cache, and denied that they had ever sold intoxicating liquors as a part of their business or otherwise. A plumber, called by the appellants, testified to the repair of water pipes in the basement at different times during the year and a half preceding the trial, and testified that, on each of his visits to the basement, he found the post above described in position. He testified further that, on his first visit, he accidentally came in contact with the post and found it fastened in place, but that on his subsequent visits,

knowing its position, he avoided it, and was unable to say whether at any of his subsequent visits it was fastened or movable.

The appellants first contend that the evidence was insufficient to justify the verdict, and that the trial court should have instructed the jury to return a verdict of acquittal in accordance with their request. But we cannot think the question requires extended argument. There was here, in our opinion, substantial evidence tending to show the guilt of the accused of the crime charged. In such a case, it is the duty of the trial court to submit the question of the guilt to the jury. As we said in *State v. Hyde,* 22 Wash. 551, 61 Pac. 719:

"This motion [motion for a directed verdict] is a general one, and only challenges the general sufficiency of the evidence; that is, says, in effect, there is a total failure of evidence. Upon a motion of this kind, the only question raised is whether there is any evidence tending to prove the crime charged, not whether the evidence fails in some particular matters."

So in *State v. Hill,* 45 Wash. 694, 89 Pac. 160, speaking to the same general question, we said:

"But the general rule is that the weight and credibility of the evidence in a criminal case is for the jury, and that the appellate court will not disturb the verdict where the criminatory evidence is substantial, even though it might have found the other way were the question one over which it had original jurisdiction. *State v. Maldonado,* 21 Wash. 653, 59 Pac. 489; *State v. Coates,* 22 Wash. 601, 61 Pac. 726; *State v. Norris,* 27 Wash. 453, 67 Pac. 983; *State v. Bailey,* 31 Wash. 89, 71 Pac. 715; *State v. Kroenert,* 13 Wash. 644, 43 Pac. 867; *State v. Murphy,* 15 Wash. 98, 45 Pac. 729; *State v. Manville,* 8 Wash. 523, 36 Pac. 470; *State v. Ripley,* 32 Wash. 182, 72 Pac. 1036; *State v. Fair,* 35 Wash. 127, 76 Pac. 731."

See, also, *State v. Clem,* 49 Wash. 273, 94 Pac. 1079; *State v. Gilluly,* 50 Wash. 1, 96 Pac. 512; *State v. Jakubowski,* 77 Wash. 78, 137 Pac. 448.

The further contentions relate to matters which, if error, require a new trial. The first of these is that the questions propounded to the witnesses concerning the reputation of the place were not sufficient in form to elicit answers on the question at issue, namely, the reputation of the place as one maintained for the unlawful sale of intoxicating liquors. The questions were varied in form, and as illustrations we may quote the following: "Do you know the reputation of the place as being a place where intoxicating liquor and alcohol is sold?" "During the time you have known these men do you know what the reputation of that place has been as to being a place where intoxicating liquor other than alcohol has been sold?" "During the time you have known these men, officer, do you know what the reputation of that place has been as to being a place where intoxicating liquor is unlawfully sold?" Viewing the questions without the aid of the extrinsic matters, it may be conceded that they are subject to the objections made against them. But when read with the context we are unable to conclude that the jury were in any way misled by them as to the issue involved. The charge against the appellants was that they maintained and conducted a place for the unlawful sale of intoxicating liquor, and the jury must have understood that the questions were directed to the proof of that issue. Furthermore, the questions were not objected to because of their form. Doubtless, had such an objection been made, the trial court would have required them to be made more definite, but it was not error to fail to do so on a general objection to the admission of proof of this sort.

The second ground of objection to the testimony is that the proofs of reputation were not confined to the time the appellants were maintaining and conducting the place. It is true that one of the state's witnesses did testify to the reputation of the place at a time when it was in another ownership, but upon objection the court confined the evidence to the time it was maintained and conducted by the appellants.

We find no cause for reversal, and the judgment of the trial court will stand affirmed.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and HOL-COMB, JJ., concur.