[No. 22941.   Department Two.   March 11, 1931.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE T. CROCKETT, *Appellant.*[1]

*Wright & Catlett,* for appellant.

*James W. Bryan,* for respondent.

MILLARD, J.—By the first count of an information, the defendant was charged with the crime of opening

[1]Reported in 296 Pac. 1041.

up, conducting and maintaining ''a place known as the Kolgray Hotel for the unlawful sale of intoxicating liquor.'' By the second count of the information, the defendant was charged with the crime of having intoxicating liquor in his possession with intent to sell the same. The trial resulted in a verdict of not guilty on the first count and guilty on the other count. From the judgment and sentence pronounced in accordance with the verdict, the defendant has appealed.

Counsel appearing for appellant in this court did not represent him in the trial court.

█ Appellant first contends that the testimony introduced by the state as to the reputation of the Kolgray Hotel as a place where intoxicating liquor was sold should not have been admitted.

The appellant was being tried on a jointist charge. The gist of the charge is the maintaining of a place for the sale of intoxicating liquor. The appellant denied all knowledge of sales of liquor in that hotel, and testified that he did not possess any intoxicating liquor in that place; that he never had had any intent of selling intoxicating liquor. There was not, in fact, any evidence that the appellant actually participated in the making of any sales at the hotel. There was evidence, however, tending to prove that the appellant knowingly permitted others to keep liquor therein for such purpose. The appellant was guilty of maintaining a place for the unlawful sale of liquor, if he knowingly permitted other persons to keep liquor in that place for such purpose, although the appellant, himself, did not make, nor did he intend to make, any sales. The evidence complained of was offered to support the charge contained in the first count of the information (the jointist charge), as to which, it was admissible.

█ It does not appear that the appellant requested instructions as to this phase of the case. He should

have requested that, if the jury found him not guilty on the first charge of maintaining a joint (to the proof of which, the evidence was, of course, admissible), but found him guilty of the crime of possession with intent to sell, the evidence should not be considered by the jury in arriving at their verdict of guilty on the second count of the information. Appellant may not now successfully raise the question.

"We have upheld the admission of evidence as to reputation of a place in jointist cases where the gist of the charge is the maintaining of a place for the sale of intoxicating liquor and no evidence that the person charged had actually participated in the making of sales at the place has been produced. *State v. Perrin*, 127 Wash. 193, 220 Pac. 772; *State v. Panovich*, 136 Wash. 20, 238 Pac. 903; this upon the theory that:

" ' . . . evidence of common repute is not competent to prove the substance of the issue, but is competent only to prove notice of a fact when notice of such fact becomes a material inquiry.' *State v. Fairfield*, 143 Wash. 355, 255 Pac. 661." *State v. Remick*, 156 Wash. 19, 286 Pac. 67.

"The evidence tended to show that he conducted it jointly with another. While there was evidence of actual sales of intoxicating liquor at the place, there was no positive evidence that the appellant himself made such sales, or participated in or had knowledge of the sales made by others; in fact, he not only denied that he assisted in maintaining it as a place for the unlawful sale of intoxicating liquor, but denied having knowledge that it was so maintained. Whether he had such knowledge was, therefore, a material inquiry, and evidence of the reputation of the place was competent on that issue." *State v. Fairfield*, 143 Wash. 355, 255 Pac. 661.

■ Appellant next contends that the court erred in refusing to admit the testimony of his witness, Mrs. Kate Crockett.

This lady testified that, at the time of the trial, she resided in Tacoma; that she formerly resided in Brem-

erton, where she operated a hotel, a room of which was occupied by a woman who testified on behalf of the state in the case at bar; that she was well acquainted with the woman at that time. The witness was then asked the following questions, objections to which were sustained:

"Would you believe her under oath? Do you know her reputation for telling the truth? Are you acquainted with her as to whether or not she is a truthful person? Do you know whether or not she is a lewd, lascivious person?"

Objection was also sustained to the offer to prove by the witness that the state's witness

" . . . is a lewd, lascivious person and a common prostitute. We also wish to prove by this witness that she is not worthy of belief, that she would not believe her."

The impeaching witness had been in the hotel business eighteen months in Bremerton prior to her removal to Tacoma. When did she take up her residence in Tacoma? At what time was she a resident of Bremerton? The locality of reputation and the time of reputation of the state's witness were not shown. The proper foundation was not laid for the impeaching by appellant's witness of the reputation or character of the state's witness.

"To prove the bad character of one witness by another, the latter must first be questioned to ascertain whether he is competent to give testimony upon the subject. In other words, a proper foundation must be laid before one witness can testify concerning the character of another. The impeaching witness may be asked if he is acquainted with the general reputation for truth and veracity of the party sought to be impeached; and it is erroneous to refuse to permit him to answer such question, unless he first states that he has heard a majority of all his neighbors speak of his character for truth and veracity. Cross examination

as to the source of knowledge must be deferred until after the witness has testified in chief. The usual form of interrogatory is first to ask the impeaching witness whether he knows the reputation of the witness in his neighborhood; second, whether it is good or bad; and finally, if he answers that it is bad, whether, from his knowledge of that reputation, he would believe the witness under oath. There is some controversy as to whether an impeaching witness can be asked whether he would believe another witness under oath, but the great weight of American authority is to the effect that such a question can be asked. It has been suggested that the proper inquiry is not whether the impeaching witness would believe the other under oath, but whether, in view of his reputation, he is worthy of belief on oath. Such a refined distinction is not generally recognized, however. In some jurisdictions it has been held in direct opposition to the current of authority, that an impeaching witness cannot be asked whether he would believe another under oath. An answer to an interrogation of this character is viewed as nothing more than the expression of a personal opinion of the witness. It has been held that an instruction that a witness is not impeached unless the impeaching witnesses not only testify to his bad character, but also that they would not believe him on oath, is erroneous. The credibility of the witness is for the jury to decide, and the mere fact that the impeaching witnesses fail to state that they would not believe the witness under oath does not authorize the court thus to remove the question of the witness's credibility from the jury. A question to an impeaching witness should properly relate to the reputation of the impeached witness rather than to his character, as after all it is his reputation and not his actual character that is in issue. What a witness has heard as to the character of a person cannot be given in evidence on the part of the person for whom he has testified that he knows the character under inquiry, although such matters may be brought out on cross examination.'' 28 R. C. L., p. 628, § 215.

''In giving evidence to impeach the character of another witness the impeaching witness must speak from

the other's general reputation, and not from his own private opinion. Indeed, he cannot give his own opinion of the other's character. He is incompetent to testify when his belief as to character is based upon his individual opinions and feelings, and not upon his knowledge of the reputation of the witness in the community in which he lives." 28 R. C. L., p. 630, § 216.

"When the credibility of a witness is sought to be impeached by proof of his general reputation or character, the inquiry is usually confined to his reputation in the locality where he resides." 28 R. C. L., p. 631, § 217.

"When the reputation of a witness is sought to be proved, this is to be established by evidence of his general reputation at the time of the trial, and not at a period remote from the commencement of the suit." 28 R. C. L., p. 632, § 218.

■ Appellant insists that the evidence is insufficient to sustain the verdict of guilty of the crime of having intoxicating liquor in his possession with intent to sell the same.

The evidence as to sales by persons other than appellant in rooms of the hotel, and the finding of a large quantity of moonshine whiskey in one of those rooms, may be disregarded. The hotel was operated by appellant. One raid of that building resulted in the finding of eleven pints of intoxicating liquor in appellant's kitchen. One witness called it "liquor" and another termed it "alcohol." Whatever designation given to that liquid by the witnesses, that it was moonshine whiskey clearly appears from the evidence. Some of the witnesses, when testifying as to raids made on the premises of the appellant, in referring to intoxicating liquor employed terms such as "alcohol," "liquor," "moonshine whiskey," and "moonshine." What was understood is patent. No one questioned that the eleven pints of liquid were intoxicating, that the contents of the bottles were moonshine whiskey.

Eleven pints of intoxicating liquor were found in appellant's kitchen, a place of which appellant had possession and over which he had control. The presumption follows that he had control of all of the things within that kitchen. The quantity of liquor found within that kitchen, made it a question of fact for the jury, under all of the facts of the case, whether it was sufficient to be available for unlawful use.

Our examination of the record not disclosing reversible error, the judgment is affirmed.

TOLMAN, C. J., BEELER, and FULLERTON, JJ., concur.

BEALS, J., dissents.