[No. 31851. *En Banc.* June 19, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT DEWAYNE WOLF, *Appellant*.[1]

*Bell & Lande*, for appellant.

*Charles O. Carroll* and *F. A. Walterskirchen*, for respondent.

[1]Reported in 245 P. (2d) 1009.

HAMLEY, J.—Robert DeWayne Wolf here appeals his conviction of the crime of carnal knowledge of a seventeen-year-old girl.

On the evening of March 23, 1951, defendant and one or two other young men called for the prosecuting witness at her home in Renton Highlands, in King county. They then drove to Renton in defendant's car. Here they met two more young men who had another car. The entire party then drove, in the two cars, to a cafe in Auburn, where they stopped for coffee. The party (with or without defendant as a member) then drove on in defendant's car, the other automobile having become disabled. Considerable drinking was in progress. They parked at a secluded spot on Monster road, near Renton. Here all of the young men who were then in the car, except one who had become too intoxicated, had intercourse with the prosecuting witness.

Defendant does not deny that he was a member of the party up to the time they stopped at the cafe at Auburn. It is his contention, however, that while he was drinking coffee and dozing at the cafe for an hour or so, the others took his car without his permission and drove to the place where the crimes were committed. He testified that the others later returned to the cafe and he rejoined the party before they took the prosecuting witness back to her home. Two waitresses at the cafe testified in support of defendant's alibi.

The prosecuting witness and the four other young men testified that defendant was with the party during the entire evening, and was one of those who had intercourse with the prosecuting witness. Three of these other youths had been charged with the same crime. Two had pleaded guilty, and the case of the third had been transferred to the juvenile court. Three of these four men testified that defendant had later attempted to get them to protect defendant by giving a false account of the evening's activities. Two members of the Renton police department testified that when they were investigating the case, defendant had told them that he had been at home all that evening.

The jury returned a verdict of guilty, and judgment and sentence were entered accordingly.

The first assignment of error relates to appellant's offer to prove, by two witnesses, that the prosecuting witness' reputation for morality in the neighborhood was bad. The trial court refused to admit the offered testimony.

It is conceded that neither the element of consent nor the prosecuting witness' previous chaste character is an essential ingredient of the crime charged. The record also indicates that the state did not attempt to affirmatively establish the prosecuting witness' previous chaste character. Appellant offered this evidence for the sole purpose of affecting credibility.

Evidence relative to immoral conduct by a witness, when offered for the purpose of affecting credibility, falls into two classes: (1) cross-examination or independent evidence tending to show specific acts of misconduct; and (2) evidence tending to show general reputation for chastity.

Precedent for the admission in the courts of this state of evidence falling in either of these categories, whether considered as a matter of "right" or as a matter of judicial discretion, goes back to the early case of *State v. Coella*, 3 Wash. 99, 28 Pac. 28. This was a murder case in which it was held reversible error to exclude cross-examination as to whether a witness called by the state was a prostitute. The reasoning behind that decision was epitomized in this excerpt from that opinion:

"She could not have ruthlessly destroyed that quality upon which most other good qualities are dependent, and for which, above all others, a woman is reverenced and respected, and yet retain her credit for truthfulness unsmirched." (p. 106)

Our immediate concern is with regard to the second of the two categories of evidence referred to above. It will therefore not be useful to recount in detail the development of the rule relative to the admissibility of evidence as to specific acts of misconduct. It may be noted, however,

that the rule permitting the parties to introduce such evidence as a matter of right, as distinguished from judicial discretion, has been applied only in cases involving seduction (*State v. Jones,* 80 Wash. 588, 142 Pac. 35), statutory rape (*State v. Godwin,* 131 Wash. 591, 230 Pac. 831), and gambling (*State v. Smith,* 145 Wash. 250, 259 Pac. 711). The latter case was overruled, in effect, in *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405, and the rule permitting such evidence as a matter of right was completely abandoned as to all types of cases in *State v. Linton,* 36 Wn. (2d) 67, 216 P. (2d) 761. In that decision, involving a charge of statutory rape, it was held that the admission of evidence as to specific acts of misconduct, to affect credibility, rested within the sound discretion of the trial court.

Disregarding expressions in the nature of *dicta,* the rule regarding the admissibility of evidence as to general reputation for chastity, for the purpose of affecting credibility, appears to have been first announced in *State v. Workman,* 66 Wash. 292, 119 Pac. 751. This was a prosecution for the crime of statutory rape. It was there held reversible error to exclude such evidence. *State v. Coella* was cited as authority for the decision. *State v. Jackson,* 83 Wash. 514, 145 Pac. 470, involving a prosecution for the crime of conspiring to obstruct justice, resulted in a similar decision, again based upon *State v. Coella.*

In several subsequent decisions, this court has approved the practice of receiving such evidence to affect credibility. *State v. Wingard,* 92 Wash. 219, 158 Pac. 725; *State v. Elder,* 130 Wash. 612, 228 Pac. 1016; *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873; *State v. Crockett,* 161 Wash. 262, 296 Pac. 1041; *State v. Thomas,* 8 Wn. (2d) 573, 113 P. (2d) 73; and *State v. Hoggatt,* 38 Wn. (2d) 932, 234 P. (2d) 495. In the *Elder* and *Hoggatt* cases, it was indicated that the admission of such evidence lies within the sound discretion of the trial court. This is to be compared to the rule laid down in the *Workman* and *Jackson* cases, to the effect that a party is entitled to introduce such evidence as a matter of right.

In the instant case, it is not clear from the record whether the trial court's rejection of the proffered testimony resulted from an exercise of discretion or represented a ruling that such evidence is wholly inadmissible. For the reasons indicated below, we believe that such evidence was wholly inadmissible and that the correct result was therefore reached, whichever reason may have motivated the trial court.

■ The admissibility of evidence as to general reputation for immorality, to affect credibility, whether as a matter of right or of judicial discretion, is predicated upon the philosophy of *State v. Coella, supra.* That philosophy was expressly rejected in *State v. Linton, supra.* In doing so, this court referred to decisions from other jurisdictions which deal with evidence as to general reputation, as well as decisions dealing with evidence as to specific acts. We there characterized as "logically sound" a quoted portion of the opinion in *People v. Gray,* 251 Ill. 431, 96 N. E. 268, a part of which reads as follows:

" 'If the reputation of the prosecuting witness for chastity were to be held admissible as going to her general credibility, then, logically, such testimony would be equally admissible as to the credibility of any female who might be called to give evidence in any case. The court properly excluded the evidence as to the reputation of the prosecuting witness for chastity.' " (p. 93)

*State v. Linton* left the door open to receive evidence as to specific acts of immoral conduct if the trial court, in its discretion, found it acceptable. Likewise, *State v. Elder, supra,* and *State v. Hoggatt, supra,* left the door open to receive evidence as to general reputation for chastity if the trial court, in its discretion, found it acceptable. However correct that ruling may be with respect to evidence as to specific acts of immoral conduct (a question which is not before us), we are now convinced that the trial court should no longer be considered as having discretion to receive evidence as to general reputation for chastity for the purpose of affecting the credibility of the witness.

If, as we in effect said in *State v. Linton,* the trait of chastity has no such definite correlation with that of veracity as to justify courts in using the former as a criterion of the latter, then it is difficult to see where there is any room for the exercise of judicial discretion. As long as such discretion is lodged with the trial courts, questions as to reputation for immoral conduct will be asked. It is the asking of such questions in front of the jury which does the principal damage. *Warren v. Hynes,* 4 Wn. (2d) 128, 138, 102 P. (2d) 691. If the witness' reputation for chastity is so bad that it has in some way affected his or her reputation for truth and veracity, then the direct question can be asked as to reputation for truth and veracity. If the witness' reputation for chastity has not produced this result, then the jury should not be invited to make this deduction.

For the reasons stated, it is our conclusion that the evidence was properly excluded.

█ The only other assignment of error discussed in appellant's brief relates to the admission, over his objection, of the testimony of a police officer that, on the day following the occasion in question, the prosecuting witness had identified appellant as one of the offenders. Appellant contends that the admission of this testimony violated the rule which excludes evidence of the details of the complaint, including the identity of the offender and the nature of the act, and admits only such evidence as will establish whether or not a complaint was timely made.

Respondent argues that the evidence was admissible under an exception to the above rule which permits the admission, on rebuttal, of prior consistent testimony for the purpose of re-establishing the witness' credibility, where the opposing party has raised an inference of recent fabrication. Both parties rely upon *State v. Murley,* 35 Wn. (2d) 233, 212 P. (2d) 801.

The general rule is as stated by appellant. It has been announced and applied in many cases, including *State v. Murley, supra,* and in the recent case of *State v. Goebel, ante* p. 18, 240 P. (2d) 251.

■ The principles regarding the recent-fabrication exception to that rule, as summarized in *State v. Murley*, are as follows:

"A witness' prior out-of-court statements consistent with his in-court testimony are admissible for the sole purpose of re-establishing the witness' credibility when: (1) his testimony has been assailed (2) under circumstances inferring recent fabrication of his testimony (3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements." (p. 238)

The record reveals the following situation: On cross-examination, the prosecuting witness was asked whether she had always maintained that the crime occurred as she had told in court, and that appellant was involved in it. She answered in the affirmative, and was then asked whether she recalled making a statement to Mrs. Don Freeman, a nurse in the Renton hospital, immediately following the crime. The witness answered that she had made no statement to a nurse alone.

Appellant then called Mrs. Freeman as a witness. Her testimony on direct examination was to the effect that the prosecuting witness, immediately after the incident, had given an entirely different account as to how the crime was committed, and had omitted mentioning appellant's name in identifying those who had committed the crime. On cross-examination, counsel for the state questioned whether Mrs. Freeman had actually heard the prosecuting witness identify the assailants. Mrs. Freeman then stated positively that the prosecuting witness had mentioned the names, but that appellant's name was not among them.

The state then recalled a police officer, who gave the questioned testimony to the effect that, on the day following the crime, the prosecuting witness had identified appellant as one of her assailants.

■ The record, as summarized above, indicates that all elements of the recent-fabrication exception, as stated in *State v. Murley*, were here present. The testimony of the prosecuting witness was definitely assailed under circum-

stances inferring recent fabrication. The prior out-of-court statement identifying appellant (as distinguished from the bare complaint) was made under circumstances minimizing the risk that the witness foresaw the legal consequences of such statements. This is true because these statements were not volunteered in an attempt to create evidence against appellant, but were elicited by the police officer during a routine investigation of the crime.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, DONWORTH, WEAVER, and OLSON, JJ., concur.

FINLEY, J. (concurring in the result)—I think the rule as presently stated under our decisions, making it discretionary with the trial court as to whether evidence will be admitted relative to, (a) specific acts of misconduct, or (b) general reputation for chastity as bearing upon credibility, should be adhered to in the instant case. The policy inherent in such a rule seems to me to be much more sound as a practical matter than the rule excluding such evidence entirely. While it may be theorized—and possibly, fairly convincingly—that any relationship between chastity and credibility is remote; and while instances may be cited wherein prostitutes have been known to be quite truthful and somewhat reliable individuals; nevertheless, as a practical matter or general proposition, it seems to me that a strong sense of morality, or the impulse to comply with recognized moral standards, constitutes the common base for, (a) truthfulness or credibility, and (b) chastity.

If such a common base has been weakened or is missing in the case of chastity, it seems to me, as a general proposition, quite likely that such a base may be weakened or missing in connection with other moral aspects of human relationships. I cannot agree that reputation for chastity and credibility are completely unrelated. It appears to me that the contrary would be nearer the truth, and that a basis or justification exists for the rule allowing evidence of the former to be admitted in the discretion of a trial court as

proof respecting the latter. The majority opinion refers to the early Washington case of *State v. Coella*, 3 Wash. 99, 106, 28 Pac. 28, wherein the court said:

"She could not have ruthlessly destroyed that quality upon which most other good qualities are dependent, and for which, above all others, a woman is reverenced and respected, and yet retain her credit for truthfulness unsmirched."

The good common horse sense in the above quotation seems quite convincing to me. I accept its down-to-earth practicality.

An element of safety or tolerance may possibly be brought into play in seduction and rape cases by adhering to the rule of admissibility in the discretion of the trial court. I am convinced that the element of safety or tolerance as it may inhere in the exercise of discretion by the trial court judge would be highly desirable. The evidence admitted under such circumstances should not be regarded as a defense. Its significance should be restricted and the jury carefully instructed to consider it solely in connection with the question of the credibility of the prosecutrix. Discretionary admissibility can be restricted to cases of seduction and rape. Admission of evidence as to specific acts of misconduct as a matter of right, under the older Washington cases, seems to have been limited to cases involving seduction, statutory rape and gambling. *State v. Jones*, 80 Wash. 588, 142 Pac. 35; *State v. Godwin*, 131 Wash. 591, 230 Pac. 831; *State v. Smith*, 145 Wash. 250, 259 Pac. 711. In connection with the rule of discretionary admissibility, the fear of extending the rule or of throwing the door wide open in all cases involving a woman litigant or witness, as theorized in *People v. Gray*, 251 Ill. 431, 96 N. E. 268, seems like nothing more or less than putting up a straw man. That argument is not convincing to me.

Admission of evidence of *specific acts of misconduct* as a *matter of right* was abandoned in favor of a rule of admission at the discretion of the trial court in *State v. Linton*, 36 Wn. (2d) 67, 216 P. (2d) 761. Admission of evidence

respecting *general reputation for chastity* is no longer a *matter of right*. Its admission is discretionary under existing decisions. *State v. Elder,* 130 Wash. 612, 228 Pac. 1016; *State v. Hoggatt,* 38 Wn. (2d) 932, 234 P. (2d) 495.

In 3 Wigmore on Evidence (3d ed.) 447 through 468, there is a clear and noteworthy discussion of the problem of admissibility of evidence concerning reputation for chastity, and evidence respecting social and mental history, as bearing upon veracity or credibility of a prosecutrix in cases involving charges of sex offences. The discussion is too lengthy to be quoted in full; however, it is too well reasoned and pertinent to be overlooked entirely in disposing of the instant case. Since it would be difficult to improve upon Wigmore's language, I quote verbatim some noteworthy paragraphs from his discussion (3 Wigmore on Evidence (3d) 459-469, § 924a):

"The modern realist movement having insisted on removing the veil of romance which enveloped all womanhood since the days of chivalry, it is now allowable for judges to look at the facts. The facts are that there exist occasionally female types of excessive or perverted sexuality, just as there are such male types; and that these are often accompanied by a testimonial plausibility which should not be taken at its face value. Only an inquiry into the social and mental history will reveal the degree of credibility. This inquiry the law of Evidence ought to permit to the fullest extent, rejecting the hindrance of rules that were framed without an understanding of these facts.

"*No judge should ever let a sex-offence charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.*

"It is time that the Courts awakened to the sinister possibilities of injustice that lurk in believing such a witness without careful psychiatric scrutiny."

Significantly, Wigmore further elaborates on the problem, as follows (p. 459, § 924a):

"There is, however, at least one situation in which chastity may have a direct connection with veracity, viz. when a *woman or young girl testifies* as complainant against a man charged with a sexual crime,—*rape, rape under age,*

*seduction, assault.* Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offences by men. The unchaste (let us call it) mentally finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or the victim. On the surface the narration is straightforward and convincing. The real victim, however, too often in such cases is the innocent man; for the respect and sympathy naturally felt by any tribunal for a wronged female helps to give easy credit to such a plausible tale.

"No doubt any judge of a criminal Court and any prosecuting attorney can corroborate this with instances from his own observation. But the lamentable thing is that the orthodox rules of Evidence in most instances prevent adequate probing of the testimonial mentality of a woman-witness, so as to reveal the possible falsity of such charges. Judging merely from the reports of cases in the appellate courts, one must infer that many innocent men have gone to prison because of tales whose falsity could not be exposed. And the situation of injustice has become the more extreme, because in some States the so-called age of consent has been raised to 16 or 18 years (thus making consent immaterial below that age) and in a few States even life imprisonment may be imposed; so that a plausible tale by an attractive, innocent-looking girl may lead to a life-sentence for the accused, because the rules of Evidence (and the judge's unacquaintance with modern psychiatry) permit no adequate probing of the witness' veracity."

There are serious questions concerning the social desirability of the rule of admissibility of evidence respecting reputation for chastity as a matter of right. That rule has been abandoned in this state, and I think wisely so. Under it, the possibilities of unnecessary embarrassment, damage to character of a prosecutrix, are too great. These negative values inherent in that rule appear to overbalance the socially desirable ones. Under such a rule, too much free play is given to possible motives of revenge and spite, and callow

disregard or unawareness of social responsibilities by the defending side. But discretionary admissibility—currently the rule in this state—is a different matter. Under it, dangers to a prosecutrix are minimized by the exercise of discretionary power or control of the situation by the trial court, and a careful and somewhat scientific examination of reputation for chastity and social and mental history of the prosecutrix may be accomplished. Such an examination, restricted by and subject to the careful scrutiny and discretion of the trial judge, affords protection to a defendant without denying it to a prosecutrix. Motives of revenge and spite, and callow indifference or unawareness of social results, may be kept within reasonable bounds by the trial court.

In disposing of the problem at hand, we are working in a highly specialized and somewhat experimental field of human knowledge—that of sex psychology, as the above quotations from Wigmore indicate. Despite taboos, there has been considerable research in this field in comparatively recent years, and the knowledge gained is significant. Admittedly, many of .the findings and conclusions in this new science of human relationships are more or less tentative. But those referred to by Wigmore appear to me to sustain a significant correlation between chastity and the matter of veracity of alleged female victims in cases involving sex offenses. However that may be, for the present at least, it appears to me that the experience and knowledge of several generations of judges regarding the problem at hand should not be discarded by overruling the dispositions of the problem as made in *State v. Elder, supra, State v. Linton,* 36 Wn. (2d) 67, 216 P. (2d) 761, and *State v. Hoggatt, supra,* wherein the rule of discretionary admissibility was approved and followed. In *State v. Elder, supra,* at p. 618, we said:

"The next complaint is that the court unduly limited the evidence on the part of the defendant. The state introduced a physician, who testified to an examination he made of the prosecuting witness shortly after the offense charged was alleged to have been committed, in which he found a rup-

tured hymen. He did not say that the hymen bore evidence of having been freshly ruptured, and frankly stated that he had no means of knowing what caused the rupture. To combat this, and as evidence affecting the credibility of the prosecuting witness, the court permitted the appellant to show a purported admission that she had had sexual intercourse with another man, that she was an incorrigible and had been sent to a reformatory institution as such, and to show her general character and habits prior to the time of the alleged offense. The court only checked counsel when he thought he was going too far in this latter direction. How far a litigant will be permitted to go in showing facts affecting the credibility of a party or witness is largely within the discretion of the trial court, to be reviewed for an abuse of the right only. Here, we think, the court allowed the appellant all of the latitude the case required."

In *State v. Linton, supra,* at p. 91, we said:

"We have reached the conclusion that the rule enunciated in *State v. Godwin,* 131 Wash. 591, 230 Pac. 831, and restated as dicta in *State v. Pierson,* 175 Wash. 650, 27 P. (2d) 1068, *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405, and in several other opinions heretofore handed down by this court, to the effect that it is reversible error to deny the defendant, in a statutory rape case, the 'right,' as it is called in the *Godwin* case, of questioning the prosecuting witness as to her prior chastity, is illogical and contrary to the weight of authority in the courts of last resort of the United States. *In other words, we now hold that the defendant, in a statutory rape case, has no such right. Whether or not such questioning of the prosecuting witness should be permitted should, in each individual case, be within the discretion of the trial judge."* (Emphasis supplied.)

We have not heretofore negatived or withdrawn the approval of the rule of discretionary admissibility, so positively implicit in our decisions in the *Linton, Hoggatt* and *Elder* cases. I do not agree that we should do so now.

In my judgment, a review of the record in the instant case indicates that the trial judge might properly have exercised discretion in excluding the questionable evidence. It follows that complete abandonment of the discretionary rule of admissibility of such evidence is not essential to the disposition of this case and affirmance of the trial court.

As already indicated, I would disfavor abandonment of the rule in any event. Consequently, I must register disagreement with the reasoning of the majority, and can concur only in the result.

MALLERY and GRADY, JJ., concur with FINLEY, J.