Clarice A. COPES, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18131.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 7, 1964.

Decided May 21, 1964.

On rehearing on sole issue of whether the
Allen charge was properly given under
the circumstances here presented. Or-
der entered November 2, 1964, adhering
to opinion of May 21, 1964.

Mr. Ralph F. Berlow (appointed by
this court), Washington, D. C., for appel-
lant.

Mr. Anthony A. Lapham, Asst. U. S.
Atty., with whom Messrs. David C.
Acheson, U. S. Atty., Frank Q. Nebeker
and Robert X. Perry, Asst. U. S. Attys.,
were on the brief, for appellee.

Before FAHY, WASHINGTON and DAN-
AHER, Circuit Judges.

WASHINGTON, Circuit Judge:

This appeal is from a conviction for at-
tempted abortion. D.C.CODE § 22–201
(1961).

The principal question raised is an
evidentiary one. The complaining wit-
ness Jo Ann Copeland charged the ap-
pellant-defendant with having attempted
an abortion on her, and testified in some
detail about the alleged attempt and her
removal to a hospital in a desperate
condition.[1] On cross-examination Mrs.
Copeland was confronted with several
prior inconsistent explanations which

1. Her testimony as to the attempt was
corroborated to some extent by the tes-
timony of a nine-year old child who lived
with the accused at the time.

she admitted giving to various persons of the causes of her condition, e. g., that she had fallen down a flight of stairs, that she had undertaken a self-induced abortion, and so forth. She was also cross-examined intensively regarding a prior consistent statement, made at the hospital, inculpating Mrs. Copes, and defense counsel suggested to her at least three motives which might have induced her to fabricate the statement: (a) desire for freedom from police harassment, (b) desire to receive medical treatment, (c) desire to protect her husband. On redirect examination, Government counsel elicited testimony from her that she had made some of her prior inconsistent statements as to the cause of her condition because Mrs. Copes had asked her to do so and because she did not want to get Mrs. Copes, who "had been real nice to me," into trouble. Also, on redirect examination, she testified concerning the circumstances surrounding the making of the prior consistent statement, during which she said that she at that time told the truth "Because I was getting weaker and weaker all the time. I thought I was dying, * * * I figured I was close to death * * *." She stated further that she did not want to die with a lie on her soul. Defense counsel did not object to this, and, on recross-examination, intensively explored the witness' motive for having given the statement in the hospital, which accused the defendant of having caused her condition.

Before defense counsel had completed his initial cross-examination, but after he had elicited the fact that a prior consistent statement had been made and had suggested that the motive for it was to shield her husband, the prosecution called to the stand Dr. Hirsch, the attending physician at the hospital. Over objection, Dr. Hirsch testified that Mrs. Copeland had in his presence identified appellant as the person who had attempted the abortion, that he had told her that

she was severely ill and that "we wouldn't guarantee what was going to happen." The doctor testified that he "couldn't recall exactly the words that we used," but that he "thought personally she was going to die." Subsequent to this, and after Mrs. Copeland's testimony had been completed, Detective Buch, also over defense counsel's objection, testified that he had been present and had heard the same statement by Mrs. Copeland, and said "At this time Dr. Hirsch told Mrs. Copeland she was dying, and at this time she said she knew she was dying, and she said she wanted to tell the truth of what happened." Both Dr. Hirsch and Detective Buch testified that the appellant-defendant was present when the prosecutrix made the statement accusing her and that she immediately denied the accusation.

The appellant urges that it was prejudicial error to allow Dr. Hirsch and Detective Buch to testify before the jury as to the statements made to them by the complaining witness which were consistent with her trial testimony. We think it was not error under the special circumstances present here, for reasons now to be explained.

■■ In his cross-examination of the complaining witness defense counsel introduced the subject of a prior consistent statement by eliciting admissions from her that she had made prior consistent statements, as well as prior inconsistent statements. He did not object when the prosecutor on redirect examination asked her to testify—with reference to her accusation at the hospital—that she then told the truth because she feared impending death.[2] Furthermore, defense counsel, on his cross-examination of the prosecutrix, had suggested that the complaining witness had a motive to lie, in accusing Mrs. Copes. His cross-examination thus directly raised issues for the jury as to the credibility of the testimony of the

---

2. Concededly, it was proper on redirect to explain and complete her testimony on cross-examination. Zacher v. United States, 227 F.2d 219, 227 (8th Cir. 1955), cert. denied, 350 U.S. 993, 76 S. Ct. 542, 100 L.Ed. 858 (1956); Kowalchuk v. United States, 176 F.2d 873, 878 (6th Cir. 1949).

complaining witness, and as to her true motive in making the prior statement in the hospital, as well as the inconsistent ones. Certainly in these circumstances it was open to the prosecution to offer the testimony of other persons, who were present along with the accused defendant when the prior consistent statement was made, indicating the content of the statement and the circumstances under which it was made. Such testimony was plainly relevant and proper to an evaluation of the credibility of the prosecuting witness which was under attack. See Harris v. United States, 50 App.D.C. 139, 269 F. 481 (1920), and United States v. Leggett, 312 F.2d 566 (4th Cir. 1962).[3] The credibility of the prosecutrix' testimony could not of course be resolved solely by her reiteration on redirect examination that her testimony on direct examination was true. The prior statement made when she was in fear of imminent death and in the presence of the accused defendant could be viewed by the jury as highly pertinent on credibility, and be weighed with the prosecutrix' testimony that the prior inconsistent statements by her were not true and were made for stated reasons.

The questioned testimony was also relevant and proper to an evaluation of her motive for making the prior consistent statement, her motive having been put in issue by the defense. The testimony of the doctor and Detective Buch showed the condition of the declarant and, if believed, tended to confirm that she thought that she was near death at the time.[4] Their testimony could be construed by the jury, if credited, as an indication that her accusation of the defendant and her testimony at the trial were not mere recent fabrications.[5] In this connection, it is important to note that the inconsistent statements and the consistent statement were close together in point of time. The first of the inconsistent statements was made two days after the attempted abortion, others were given on the two succeeding days, and, according to the prosecutrix, they were lies, told at the direction and request of Mrs. Copes for the purpose of protecting her. The accusatory consistent statement in the hospital was made on the fifth day after the attempted abortion, at a time when the condition of the prosecutrix had grown more serious, and she and her attending doctor believed that she would die. It is further to be noted that the independent witnesses did not suggest in any way that the declaration they heard implicating the defendant was true.[6] And it is of great significance that the accusatory statement was made in the presence of

---

3. In the *Leggett* case it was said, 312 F.2d at 572, that the great weight of authority is to the effect that "the testimony of a witness cannot be fortified or corroborated by showing that he has previously told the same story out of court" but that

"exceptions arise where the credibility of the witness is impugned by the suggestion or contention that his story *is one of recent fabrication or that it differs from accounts previously given by him or that he has a motive for testifying falsely.* * * *

"The decisions following the established rule are in agreement in holding that proof of prior consistent statements is *not admissible unless and until there has been some impeachment of the witness* of the nature above referred to * * *." (Emphasis added.)

4. Although the "dying declaration" exception to the hearsay rule may not be strictly applicable, since the declarant is alive, nevertheless the rationale of that exception—that fear of impending death is a stimulus to truth-telling—suggests a possible motive for her statement, which the prosecution was entitled to elicit in rebuttal to suggestions of motives to lie. See, generally, McCormick, Evidence 555–60 (1954).

5. *Cf.* People v. Singer, 300 N.Y. 120, 89 N.E.2d 710 (1949); State v. Murley, 35 Wash.2d 233, 212 P.2d 801 (1949).

6. In the hospital and at the trial, the complainant described the manner in which she alleged the attempted abortion was made. The attending physician, at the trial, testified that the patient's condition might have been caused by a procedure such as that described by the complainant.

the accused, who promptly denied it, and that the doctor and the detective testified as to this. The jury thus had before it the statement of the accuser, the circumstances in which it was made, and the spontaneous denial of the accusation by the accused. Finally, the declarant was available and was subjected to extensive cross-examination both as to her testimony and as to all prior statements made by her. See Baber v. United States, 116 U.S.App.D.C. 358, 324 F.2d 390 (1963), cert. denied after resentence and denial of petition to appeal in forma pauperis, 376 U.S. 972, 84 S.Ct. 1139, 12 L.Ed.2d 86 (1964), and Harrod v. United States, 58 App.D.C. 254, 29 F.2d 454 (1928). In the latter case we said that since the declarants were available and testified, "It could not, therefore, substantially prejudice the defendant to have the police officers state to the jury that they had been told the same story by the same witnesses." *Supra* at 255, 29 F.2d at 455.

We are not persuaded by Conrad v. Griffey, 52 U.S. (11 How.) 480, 13 L.Ed. 779 (1850), that we should hold the testimony here inadmissible for the reason that the declarant's prior consistent statement was made after, rather than before, the prior inconsistent statements.[7] From a factual standpoint we find much more pertinent the cases cited in the margin [8] which for purposes of rehabilitating credibility, in circumstances more nearly comparable to those here, upheld the admissibility of hearsay testimony as to a prior consistent statement of a prosecuting witness, without special emphasis on the time it was made, where his or her credibility had been assailed through the showing of prior inconsistent statements, or by an attempt to show that the complainant's testimony was motivated by something other than the truth.

Although the District Court did not specifically instruct the jury that they were to treat the testimony of the

7. In the *Conrad* case, a civil suit, the evidence of a witness (not a party to the suit) was presented to the jury by the plaintiff only by way of answers to interrogatories (referred to in the opinion as a deposition). The declarant was not available for cross-examination before the jury, and apparently had not been cross-examined when the interrogatories were answered. Thus, unlike this case, the declarant's "testimony" (answers to interrogatories) was not tested by cross-examination at the trial. Further, the two prior consistent statements in the *Conrad* case were not introduced initially into the case through cross-examination of the declarant by the opposing party, as is true here. They were introduced by the plaintiff to reinforce the statements made by the deponent, and were made under circumstances (see 52 U.S. (11 How.) at 486) that evidently caused the Supreme Court to suggest the possibility that they were made "for the very purpose of counteracting those [statements] first uttered." See 52 U.S. (11 How.) at 492. No such possibility can reasonably be suggested in the present case. And in the *Conrad* case the two prior consistent statements were not made at a time when the declarant believed that he was dying and under a compulsion to tell the truth, as the jury here

could conclude if it found the prosecutrix credible. Nor were the prior consistent statements in *Conrad* made in the presence of the accused party, who promptly denied them, as here. On the evidence here, where the prosecutrix stated her reasons for the inconsistent statements—that in the beginning she, acting at the request of the defendant, tried to protect the defendant to whom she was grateful and felt friendly—the jury might have inferred that the inconsistent statements were untrue, whereas the contrary inference was suggested by the whole evidence in the *Conrad* case.

8. *Cf., e. g.,* State v. Murley, *supra;* State v. Wolf, 40 Wash.2d 648, 245 P.2d 1009 (1952); People v. Singer, *supra;* State v. Orlando, 119 N.J.L. 175, 194 A. 879 (1937); People v. Nobles, 44 Cal.App.2d 422, 112 P.2d 651 (1941); Naugle v. State, 118 Tex.Cr.R. 566, 40 S.W.2d 92 (1931); Commonwealth v. Hoyt, 279 Mass. 400, 181 N.E. 473 (1932); Lohman v. People, 1 N.Y. 379, 49 Am.Decs. 340 (1848). And see generally Annotation: Admissibility, for purpose of supporting impeached witness, of prior statements by him consistent with his testimony, 140 A.L.R. 21; Supplemented 75 A.L.R.2d 909.

doctor and the detective, insofar as they related what they heard Mrs. Copeland say in the hospital, as bearing only on the credibility of Mrs. Copeland as a witness before them and not as proof of the guilt of Mrs. Copes, such an instruction was not requested either before or after the District Court gave its charge, and the failure to give it has not been asserted as error here. In any event, the charge of the District Court included clear and emphatic instructions on the need for the jury to weigh and evaluate the testimony of each witness in the light of all factors, including motives and inconsistencies. We believe that this was an adequate instruction with respect to the prosecutrix' credibility in the light of the circumstances here. The jury not only had heard testimony as to the prompt denial by the defendant of the accusatory declaration but the declarant was available and was subjected to extensive cross-examination as to her prior statements, including the consistent statement. The danger that the jury might have treated the hearsay testimony as proof of the truth of the declarant's statement, instead of merely evidence supporting her credibility, is greatly minimized. It appears further that the point as to her credibility was extensively argued in the summations.[9] In the circumstances we cannot say that the District Court committed plain error in its instructions.

In view of the special circumstances of this case, we need not reach the further question as to the necessity generally for a limiting instruction, and intimate no opinion on that subject. We note only the views expressed in United States v. De Sisto, 329 F.2d 929 (2d Cir. 1964). There Judge Friendly, speaking for the court in a context somewhat different from that presented here, said:

"The rule limiting the use of prior statements by a witness subject to cross-examination to their effect on his credibility has been described by eminent scholars and judges as 'pious fraud,' 'artificial,' 'basically misguided,' 'mere verbal ritual,' and an anachronism 'that still impede(s) our pursuit of the truth.'"[10]

Finally, we point out that the law with respect to the admissibility of prior consistent declarations in general has undergone considerable liberalization in recent years. Cf. United States v. Apuzzo, 245 F.2d 416 at 420–21 (2d Cir. en banc 1957). See also the cases cited above. The ALI MODEL CODE OF EVIDENCE, Rule 503(b) (1942), provides that "Evidence of a hearsay declaration is admissible if the judge finds that the declarant * * * (b) is present and subject to cross-examination." Rule 63(1) of the UNIFORM RULES OF EVIDENCE, adopted by the National Conference of Commissioners on Uniform Laws (1953),[11] provides that a prior statement of a witness available for cross-examination with respect to the statement and its subject matter, may be admitted, apparently even to prove the truth of the matter stated. Our holding here of course need not and does not go that far.

9. We have been furnished only with the prosecutor's opening and closing statements to the jury. Their content shows that he argued the point, and the content of the closing statement indicates that defense counsel also argued the point.

10. Citing Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 HARV.L.REV. 177, 193 (1948); United States ex rel. Ng Kee Wong v. Corsi, 65 F.2d 564, 565 (2d Cir. 1933, Judge Swan); McCORMICK, EVIDENCE 77 (1954); United States v. Allied Stevedoring Corp., 241 F.2d 925, 934 (2d Cir. 1957, Judge L. Hand). See also 3 WIG-

MORE, EVIDENCE § 1018 (3d ed. 1940); ALI, MODEL CODE OF EVIDENCE, Rule 503 (1942); Judge L. Hand in Di Carlo v. United States, 6 F.2d 364, 367–68 (2d Cir.), cert. denied, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925); and the ruling of Mr. Justice Van Devanter at the trial in United States v. Graham, stated in Morgan, *supra*, 62 HARV.L.REV. at 194, fn. 39, aff'd, 102 F.2d 436 (2d Cir.), cert. denied, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 (1939).

11. See HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS 78, 164, 197–98 (1953).

We have examined the other contentions made by able court-appointed counsel, and find no error affecting substantial rights.

For these reasons, the judgment of conviction will be

*Affirmed.*

FAHY, Circuit Judge, concurs in the result.