[No. 38075.   Department One.   January 27, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIE PEELE
et al., *Defendants*, ALBUR HANSON HOPE, *Appellant*.*

*Reported in 410 P.2d 599.

*Albert Maimon,* for appellant.

*Charles O. Carroll* and *David W. Soukup,* for respondent.

LANGENBACH, J.†—The defendant was convicted of robbery with a deadly weapon; he has appealed. He assigned as error the trial court's (1) sustaining an objection to a question asked by his counsel on cross-examination of a state witness, and (2) denying motions for discovery.

On February 24, 1964, a Miss Morse was entertaining a few friends in her Seattle home. Shortly after 11 p.m., she opened the front door to let Mr. Weitzel leave. From the shrubbery, a man appeared; he was wearing a woman's stocking over his face, a long coat, gloves and hat. At gun point, he forced Miss Morse and Mr. Weitzel back into the house. Two other men, similarly dressed, then appeared with guns and entered the house.

Upon hearing this commotion, one of the guests left the house and called the police. Before the police arrived, the three masked men tied and gagged those present and covered them with rugs. They slapped Miss Morse until blood was drawn; two rings were removed from her finger. One of the masked men had taken her to the kitchen and there he became aware police were outside the house. He fled to the back door but, when police ordered him to stop, he ran into the basement. In pursuit, police entered the back door. At the direction of Miss Morse, an officer went to the head of the basement stairs where he summoned, "Come out. This is the police. Come out with your hands up."

Shortly, the defendant appeared from the basement. He was not wearing a stocking mask, overcoat, gloves, hat, nor was he carrying a gun. Miss Morse and the guests identified him as one of the masked men. The two other men (Peele and Taylor) were captured upstairs.

The following day, one Haney (who lived in the basement of this house) was asked by the police to search the basement. He found under a bed mattress a woman's stock-

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ing, overcoat, gloves, hat and a gun. The pockets of the overcoat contained the rings taken from Miss Morse. The basement door leading outdoors was locked and chained from the inside.

An information was filed against all three men for this robbery. This defendant posted bail and was released; he then went to New Jersey without disclosing his departure to his attorney or anyone except his landlady. At a trial scheduled for July, Taylor pleaded guilty and Peele was tried and acquitted. Defendant was later extradited.

Defendant pleaded that he was then an indigent and requested the court to appoint counsel. This was done a month before his trial. Two weeks later his counsel made a motion for discovery of all statements made by all witnesses and the names of all persons who were present at the scene of the crime, and a motion for the transcript of testimony at the trial of Peele. Both motions were based on the premise that defendant was an indigent; that counsel was unable to interview defendant until the week before and was without funds or time to conduct an investigation; and that the statements and transcript were necessary for adequate preparation and impeachment purposes. After a hearing, the court denied these motions.

Thereafter the prosecuting attorney gave defense counsel two statements. He also informed witnesses to cooperate with defendant's attorney. The transcript of the Peele trial had not been transcribed.

At the trial, defense counsel, in cross-examining Miss Morse, asked her whether her house, the scene of the robbery, was known as a house of prostitution. The trial court sustained an objection. At this time, defendant's attorney argued that "in a case like this, the question boils down to who is telling the truth. And the question of a person's veracity is governed by their background and what they do and who they know."

The following morning, counsel contended that the question was vital to the defense and was not asked to attack the veracity of the witness, and he made an offer of proof. The court ruled that in asking this question on cross-exami-

nation, an issue not yet before the trial court was being injected, and in this manner, attacking the credibility of the witness.

Later, in his defense, defendant testified that he was a victim of circumstances. He stated that early on the evening in question he met a girl in a tavern. She was a prostitute who agreed to surreptitiously meet him at Miss Morse's house at a specified time. They had agreed to meet secretly because Miss Morse ran a segregated house of prostitution and he was a Negro. He appeared at the agreed time and the girl allowed him to enter through the back door and into the basement. After they had consummated their bargain, he paid the girl and she went upstairs. Soon thereafter someone yelled that it was the police and that whoever was downstairs should come upstairs. The defendant, thinking he was caught in a vice raid, ascended the stairs.

First, defendant assigned error to the trial court's sustaining an objection to the question asked Miss Morse. He relies on the general rule stated in *State v. Lyda,* 129 Wash. 298, 301, 225 Pac. 55 (1924):

> [T]he general rule that, when evidence is pertinent and of probative force touching an issue in a case . . . such evidence is not to be excluded merely because it may also tend to prove, or create a belief or suspicion of, some fact prejudicial to a party to the case, as to which fact it would not be admissible.

The court, however, continued:

> In such a situation, the party whose rights may be prejudiced by such evidence is, of course, entitled to have it limited to the very issue to which it is relevant and competent, and have it wholly excluded from consideration with reference to any other issue in the case to which it is not relevant and competent.

■ At the time defense counsel questioned Miss Morse, it was on cross-examination; whether or not defendant was a victim of circumstances was not then before the court. The question was as defendant's counsel originally contended, *viz.,* to attack her veracity by showing she con-

ducted a house of prostitution. The trait of chastity, however, does not of itself have any correlation with veracity. *State v. Wolf*, 40 Wn.2d 648, 245 P.2d 1009 (1952). The defendant could have directly shown her reputation for truth and veracity by witnesses. Moreover, defendant could have procured witnesses to establish the truth of his story. He failed to do either.

Second, defendant assigned error to the trial court's denying the motions for discovery and for the transcript of testimony in the trial of Peele. Generally, the trial court has discretion to determine whether any or all documents in the hands of the prosecution may be examined by defense counsel, and the court will only be reversed on a manifest abuse of its discretion. *State v. Thompson*, 54 Wn.2d 100, 338 P.2d 319 (1959).

In *State v. Gilman*, 63 Wn.2d 7, 8, 385 P.2d 369 (1963), it was said: " . . . the court ought to exercise its discretion in such a manner as to assure a fair trial, neither granting to one party an unfair advantage nor placing the other at a disadvantage."

The trial court's refusing to order the prosecuting attorney to produce written statements is not a violation of due process or an abuse of discretion. *State v. Robinson*, 61 Wn.2d 107, 377 P.2d 248 (1962). Accord, *State v. Mesaros*, 62 Wn.2d 579, 384 P.2d 372 (1963).

Defendant, relying on *Gilman, supra,* argues that, since he was an indigent, he is entitled to the motions. The *Gilman case,* however, only listed "financial inability of the defendant to obtain technical and investigative aid" as one of the many elements the trial court is to consider.

The testimony in the Peele case had not been transcribed. The witnesses in that case and in this case were all in the Seattle area; their names and addresses were in the clerk's files. The prosecuting attorney informed witnesses to cooperate with defense counsel and furnished him with statements from two witnesses. There was no showing that any witness refused to cooperate or was hostile. Defendant does

not complain that his counsel failed to make any investigations up to the time of making these motions. A careful search of the entire record discloses no error.

The judgment is affirmed.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.

\*Reported in 410 P.2d 608.